[No. G034265. Fourth Dist., Div. Three. Apr. 17, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNESTO ANGEL MUNOZ, Defendant and Appellant.

**COUNSEL**

Kristin A. Erickson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda L. Cartwright-Ladendorf and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BEDSWORTH, Acting P. J.**—In *People v. Ortiz* (1990) 51 Cal.3d 975 [275 Cal.Rptr. 191, 800 P.2d 547] (*Ortiz*), our Supreme Court held a criminal defendant has the right to relieve his retained attorney and have new counsel appointed without demonstrating his retained attorney is incompetent. The issue in this case is whether *Ortiz* applies when the defendant seeks to relieve his retained attorney and have new counsel appointed *after* the defendant has been convicted. We hold that in the circumstances of this case, it does. Because the trial court ruled otherwise, and because the record shows the defendant was entitled to have new counsel appointed under *Ortiz*, we reverse and remand for further proceedings.

George Makary and his date were sitting in Makary's car when three men approached them. One of the men brandished a knife and demanded Makary give up his money and his car. When Makary refused, he stabbed him.

At trial, the primary issue was identification. Makary identified defendant as his assailant, but his date could not. In fact, she did not think defendant even resembled the stabber. The defense presented evidence suggesting the stabbing was actually committed by one of defendant's neighbors. However, the jury found otherwise and convicted defendant of assault with a deadly weapon, attempted carjacking and attempted robbery. It also found he used a deadly weapon and inflicted great bodily injury.

On June 2, 2004, 40 days after he was convicted and nine before he was scheduled to be sentenced, defendant wrote a letter to the trial judge, alleging he was not competently represented by his retained attorney, Larry Bruce. Defendant claimed Bruce did not adequately investigate the case, failed to take his phone calls, and only visited him in jail one time, back in February 2003. Defendant wrote, "Now that I'm indigent I ask the court to please appoint me a new attorney to represent me and file a motion for a new trial because I'm innocent and cannot continue to go through with being sentenced for something I did not do without proper counsel."

On June 11, the court addressed defendant's request. It said, "We're in a unique situation in that there is one set of rules when you are seeking substitution of counsel prior to a verdict and there is a different set of rules when you are seeking substitution of counsel after a verdict." The court then asked Bruce if he was declaring a conflict on the case, and he said, "Well, I could. And I've indicated to you that [defendant] has requested [that] of me." Bruce further stated that "since the time of the verdict, there are some things that I had planned to look into [regarding potential grounds for a new trial]. I'm in another bout with afib [atrial fibrillation] and I'm undertaking a different sort of treatment. So I can tell the court that I have really questioned whether I have the stamina to do that, if that makes it [the court's decision] a little bit easier."[1]

When asked to voice his complaints about Bruce, defendant said "we never really talked about the case." However, defendant was unable to point to any specific failing by Bruce. The court told defendant he was not automatically entitled to a new attorney, and to get Bruce off the case he would have to show a conflict of interest or incompetent representation. But it did not rule on defendant's request at that time. Instead, it trailed the matter until June 16, in order to give defendant a chance to read the probation report. The court

---

[1] Bruce passed away on April 26, 2005, after a distinguished career as a criminal defense attorney.

also invited defendant to submit another letter specifying the reasons why he believed Bruce was incompetent.

Defendant took up the invitation in a six-page letter. He said Bruce failed to inform him of his confrontation rights and raise credibility issues with respect to the state's witnesses, particularly Makary.[2] Defendant also said Bruce should have hired an investigator to do such things as scour the crime scene and contact potential witnesses. Defendant further complained Bruce did not do a sufficient job attacking the state's identification evidence.

Nonetheless, when proceedings resumed on June 16, the court was not convinced defendant had shown Bruce was incompetent. Bruce tried to finesse that issue by telling the court, "I'm retained counsel in this case and it's always been my understanding that a person can terminate the services of retained counsel at any time on any quantum of proof that he wants to. . . . I don't think anybody should be required to have me as their attorney if they don't want me."

Unconvinced, the judge told Bruce, "I believe that what you are suggesting is true prior to trial, or prior to a retrial. . . . [¶] I truly believe that this is a different setting. . . . [W]ere the rule to be that he could discharge you at this point, it would be an automatic situation where there would be a substantial delay in the administration of justice because any new lawyer who came in would only be competent if transcripts were prepared, the entire trial was reviewed, and then a decision was made about that. [¶] I do not believe that that is the state of the law that exists now, so if he had wished to discharge your services prior to trial, I agree with you. But just as if he wanted to discharge your services mid trial, I think it would be a discretionary call on my part and there would have to be a showing. The court believes that the same would occur now."

Believing defendant had failed to make an adequate showing that Bruce was incompetent, the court denied his request for a new attorney. The court then continued the matter for a month to allow defendant to solicit letters from his friends and family for sentencing purposes. At the sentencing hearing on July 19, the court ordered defendant to serve six years in prison.

Defendant argues the trial court erred in denying his motion to relieve Bruce. We agree.

---

[2] Because Makary was unavailable for trial, the parties had stipulated his testimony could be taken through a conditional examination. The examination was videotaped and played to the jury.

■ Our analysis begins with the *Ortiz* decision. In that case, the California Supreme Court ruled the Sixth Amendment right to counsel entitles both nonindigent defendants and indigent defendants to discharge retained counsel. (*Ortiz, supra*, 51 Cal.3d at pp. 982–987.) However, the court stated a "defendant's right to discharge his retained counsel . . . is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (*Id.* at p. 983.)

At the same time, though, the court decided a defendant seeking to relieve his retained attorney need not meet the more stringent requirements for discharging appointed counsel set forth in *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] and its progeny. Specifically, the court ruled that, unlike a defendant with *appointed* counsel, a defendant seeking to discharge *retained* counsel need not demonstrate his attorney is providing inadequate representation, or he and his attorney are embroiled in irreconcilable conflict. (*Ortiz, supra*, 51 Cal.3d at pp. 982–987.)

Applying these principles to the case before it, the *Ortiz* court held "the trial court erred by requiring defendant to demonstrate the incompetence of [his retained attorneys] before allowing him to discharge them. Defendant's motion, made after [a] mistrial [was declared in his first trial] and well before any second trial, was sufficiently timely; the timing reflects defendant's genuine concern about the adequacy of his defense rather than any intent to delay the retrial. On this showing, discharge of [defendant's retained attorneys] would not have interfered with the 'orderly processes of justice.' " (*Ortiz, supra*, 51 Cal.3d at p. 987.) The court also found the erroneous denial of defendant's right to relieve retained counsel mandated automatic reversal. (*Id.* at p. 988.)

Like the trial court in *Ortiz*, the trial court here held defendant's motion to relieve retained counsel up to the incompetence standard associated with *Marsden*. Specifically, the court relied on cases applying *Marsden* to a defendant's request to relieve his appointed counsel and have another attorney appointed for the purpose of pursuing a motion for a new trial based on ineffective assistance of counsel. (See *People v. Bolin* (1998) 18 Cal.4th 297, 346–347 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *People v. Diaz* (1992) 3 Cal.4th 495, 573–575 [11 Cal.Rptr.2d 353, 834 P.2d 1171].) In that setting, the defendant must show attorney incompetence in the record or make out a colorable claim of incompetence based on matters outside the record before the court may appoint new counsel. (*Ibid.*)

Tethered to the notion of incompetence, this standard for relieving appointed counsel is more stringent than what *Ortiz* requires for replacement of retained counsel. Nevertheless, the Attorney General argues we should apply this stricter standard in this case because unlike the defendant in *Ortiz*, who made his motion prior to the start of a retrial, the defendant here made his motion *after* he was convicted. According to the Attorney General, "the policy reasons underlying [the relaxed] standard for relieving retained counsel [in *Ortiz*] do not apply with equal force after a conviction."

■ We disagree. First of all, there is nothing in *Ortiz* that suggests it is limited to the pretrial context. To the contrary, the Supreme Court framed its holding in broad terms: "[W]hen a criminal defendant makes a timely motion to discharge his retained attorney he should not be required to demonstrate the latter's incompetence, as long as the discharge will not result in prejudice to the defendant or in an unreasonable disruption of the orderly processes of justice." (*Ortiz, supra,* 51 Cal.3d at p. 979.)

Certainly, the stage of the proceedings at which the motion is made could affect its timeliness. However, the *Ortiz* court did not draw any distinction between motions brought before trial and those made following conviction. Rather, the court said the issue of timeliness turns on whether the substitution of counsel would unduly disrupt the orderly administration of justice. That is a determination that can be readily made in both the pretrial and postverdict contexts.

■ As for the policy considerations underlying *Ortiz*, the Supreme Court said it was concerned with preserving the "delicate and confidential" relationship that exists between a defendant and his attorney. (*Ortiz, supra,* 51 Cal.3d at p. 984.) The court feared that relationship would suffer and the quality of representation would decline if the defendant and his retained attorney were forced to stay together after one of them became disgruntled. (*Id.* at pp. 984–985.) To our way of thinking, it is every bit as important to guard against these undesirable consequences after trial as it is before trial. While the Attorney General suggests the attorney-client relationship becomes less important after the verdict, the United States Supreme Court has made it clear that " '[t]he right to counsel is not a right confined to representation during the trial on the merits.' [Citation.]" (*Mempa v. Rhay* (1967) 389 U.S. 128, 133 [19 L.Ed.2d 336, 88 S.Ct. 254].) Rather, counsel's assistance is considered essential at every critical stage of the criminal process, and this includes postconviction proceedings involving motions for a new trial, sentencing and pronouncement of judgment. (*Id.* at p. 134; *Menefield v. Borg* (9th Cir. 1989)

881 F.2d 696, 698–699; *People v. Rodriguez* (1998) 17 Cal.4th 253, 257 [70 Cal.Rptr.2d 334, 949 P.2d 31].)

There is just as much "evil engendered by friction or distrust between an indigent criminal defendant and his attorney" (*Ortiz, supra,* 51 Cal.3d at p. 984) to be guarded against after trial as before. One need only consider the difference between probation and state prison to appreciate the importance of posttrial proceedings and the damage to the credibility of our justice system if defendants are forced to that determination with counsel not of their choosing.

Financial considerations also played a role in the *Ortiz* decision. Speaking for the court, Justice Mosk explained, "it is ordinarily appropriate to require the defendant who is seeking to substitute one appointed counsel for another to show cause, [i.e., a conflict or incompetency], because he is requesting duplicative representation and repetitive investigation at taxpayer expense. That is not the case here: defendant is requesting appointed counsel for the first time in connection with his retrial. Accordingly, he should be treated no differently from a defendant who qualifies for representation by, and seeks appointment of, the public defender at the outset of the proceedings against him." (*Ortiz, supra,* 51 Cal.3d at p. 986, italics omitted.)

Here, defendant had retained counsel throughout his trial and only sought appointed counsel after he was convicted. Therefore, granting his request would not have resulted in duplicative representation at taxpayer expense. True, counsel would have to have reviewed the trial record before any motions, but this was a two-day trial in which the key witness's testimony had been previously transcribed. What review was necessary could have been accomplished through a long phone call to the court reporter and an afternoon's worth of interviews. This was, then, essentially a case in which, "No additional public expense or drain on the state's limited resources is at issue . . . ." (*Ortiz, supra,* 51 Cal.3d at p. 986.)

And this is an important consideration. Most trials will not be as easily reviewed as this one, so delay and public expense will often be the primary reasons for denying motions to replace counsel post trial. The defendant must always be required to justify this additional expense to the satisfaction of the trial court, and such calls will always be within its broad discretion. Delay and public expense will militate for denial and we do not envision either a spate of such motions or a plethora of successful ones. But in this case, both the language and rationale of *Ortiz* seems to us to require that new counsel be allowed.

In coming to this conclusion, we have considered that in a related context, our Supreme Court has rejected the notion that a different standard applies when the defendant asserts his Sixth Amendment rights after he is convicted. In *People v. Smith* (1993) 6 Cal.4th 684 [25 Cal.Rptr.2d 122, 863 P.2d 192], the court determined the rules set forth in *Marsden* for substituting appointed counsel apply *"whenever* the motion for substitute counsel is made. There is no shifting standard for the trial court to apply, depending upon when the motion is made." (6 Cal.4th at p. 696.)

Nor should there be a shifting standard for the trial court to apply, based upon when the defendant seeks to relieve retained counsel. The right to counsel, which the *Ortiz* court described as "among the most sacred and sensitive of our constitutional rights" (*Ortiz, supra*, 51 Cal.3d at p. 982), is simply too important for such an arbitrary distinction. We therefore hold that the standard enunciated in *Ortiz* for judging a defendant's request to relieve retained counsel applies in the postconviction setting.

Under that standard, the defendant has the right to discharge retained counsel with or without cause. (*Ortiz, supra*, 51 Cal.3d at pp. 982, 987.) "[A]bsent prejudice to [the defendant] or unreasonable delay in the processes of justice," a motion to relieve retained counsel must be granted without regard to the quality of counsel's representation. (*Id.* at p. 987.) The Attorney General implies defendant would have been prejudiced by granting his motion to discharge Bruce because "having been present throughout the trial, Bruce was in the best position to represent [defendant] at sentencing." But the wisdom of the decision is not our call—nor the Attorney General's—to make. And merely being present at trial did not necessarily make Bruce the best candidate to represent defendant's postconviction interests. Forcing defendant to keep Bruce as his attorney would "ignore the value we place on allowing defendants to defend themselves as they deem best . . . ." (*Id.* at p. 987.) And it would ignore the fact Bruce was laboring under some very restrictive health limitations. There is simply no indication defendant would have been significantly prejudiced by appointing him a new attorney following the verdict.

That brings us to the issue of timeliness. According to the Attorney General, defendant's motion to relieve Bruce was untimely because he waited until after the verdict to make it. The Attorney General notes that had Bruce been relieved at that juncture, "new counsel would have [had] to order all the transcripts and review them in order to file a motion for a new trial." However, this does not mean substantial delay in the administration of justice was inevitable. While the trial court may have been correct had it made such a finding, there is nothing in the record to suggest any such inquiry was

made. The trial court, quite reasonably, but we think incorrectly, assumed them to be the case—as it would be in many cases.

■ "[A] court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. [Citation.]" (*People v. Turner* (1992) 7 Cal.App.4th 913, 919 [9 Cal.Rptr.2d 388].) Blanket generalizations about possible delay will not suffice. "To exercise the power of judicial discretion [in ruling on motion to relieve retained counsel], all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision." (*People v. Lara* (2001) 86 Cal.App.4th 139, 165 [103 Cal.Rptr.2d 201].) Furthermore, "The trial court . . . must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' [Citation.]" (*Ortiz, supra,* 51 Cal.3d at p. 984.)

■ Defendant's trial lasted but two days, and by the time it started, Makary's testimony had already been given and transcribed. (See *ante,* p. 865, fn. 2.) Thus, it is unlikely that preparing the record for review by a new attorney would have taken an inordinate amount of time. Moreover, the case was not particularly complicated, and defendant's complaints about Bruce were not the sort that would have left a newly appointed attorney scratching his or her head about whether to seek a new trial. While we can certainly envision circumstances under which a defendant's request for a new attorney would necessitate a lengthy delay in the proceedings, this doesn't appear to have been one of them.

In addition, defendant's repeated and detailed requests for a new attorney reflect a "genuine concern about the adequacy of his defense rather than any intent to delay" the proceedings. (*Ortiz, supra,* 51 Cal.3d at p. 987.) The record is devoid of even a suggestion defendant had an interest in delay, and, considering the fact the court *delayed the proceedings five weeks* after it denied the substitution request, it seems unlikely that appointing new counsel for defendant would have led to "an unreasonable disruption of the orderly processes of justice." (*Id.* at p. 979.)

Accordingly, we find the trial court violated defendant's Sixth Amendment right to effective assistance of counsel by denying his motion to relieve retained counsel. Because that violation mandates automatic reversal, we need not address appellant's remaining contentions. (See *Ortiz, supra,* 51 Cal.3d at p. 988; *People v. Lara, supra,* 86 Cal.App.4th at pp. 165–166.)

## DISPOSITION

The trial court's decision denying defendant's motion to relieve his retained attorney is reversed and the matter is remanded to allow defendant to discharge his retained attorney. This requires a reversal of the judgment, but it does not require an automatic retrial. Once new counsel is appointed, the case shall proceed anew from the point defendant originally sought to discharge his attorney.

Moore, J., and Ikola, J., concurred.

On April 20, 2006, the opinion was modified to read as printed above.