[No. B183053. Second Dist., Div. Four. May 5, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
FLORENTINO G. HERNANDEZ, Defendant and Appellant.

COUNSEL

Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Florentino G. Hernandez appeals from judgment entered following a jury trial in which he was convicted of possession of cocaine for sale (Health & Saf. Code, § 11351); possession of marijuana for sale (§ 11359); transportation of cocaine (§ 11352, subd. (a)); and transportation of marijuana (§ 11360, subd. (a)). He admitted that he had three prior convictions within the meaning of Penal Code section 1203, subdivision (e)(4) and Health and Safety Code section 11370.2, subdivision (a), and had served two prior prison terms within the meaning of Penal Code section 667.5, subdivision (b). Sentenced to prison for a total of nine years, he contends the judgment of conviction must be reversed because the trial court's denial of his request to discharge his retained counsel prior to trial resulted in a denial of his state and constitutional rights to counsel and due process of law. For reasons explained in the opinion, we reverse the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

As appellant does not challenge the sufficiency of evidence to support his convictions, it will suffice to observe that on August 31, 2004, Los Angeles police officers stopped a van in which appellant was the front seat passenger. In the van and within arm's reach of appellant and the van's other occupants, the officers found a large bag containing two large bricks of marijuana and a large amount of cocaine. Also recovered was $2,030 in cash.

Following advisement and waiver of his *Miranda*[1] rights, appellant stated he had asked his brother, the driver of the van, to drive him to the vicinity of Arleta and San Jose streets to meet with codefendant Olivares,[2] the van's

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

[2] On pages 307 to 308 of the transcript of the *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]), the codefendant was referred to as Carlos Oliveros.

third occupant. Olivares was to provide appellant with marijuana and cocaine in exchange for the $2,000 he had with him. Appellant stated he had saved this money from working, but he also admitted he was unemployed. Appellant stated he intended to sell the marijuana and cocaine.

It was stipulated that 27.91 grams of cocaine and 9.5 pounds of marijuana were recovered from the van and that the person or persons who possessed the drugs possessed them for purposes of sale.

## DISCUSSION

Appellant contends the denial of his request to discharge retained counsel prior to trial resulted in the denial of his state and constitutional rights to counsel and due process of law. We agree.

On January 4, 2005, on day "six of ten," the court discussed offers made by the prosecution to appellant and his codefendant. Defense counsel told the court appellant wanted to address the court. The court stated it did not talk to persons represented by counsel, but that it did know appellant was not happy with the offer made by the prosecution and wanted "to dump [defense counsel]." The court observed that the prosecution's offer would be the same regardless of who the defense attorney was and that appellant's counsel had done all he could to get the prosecution to accept appellant's counteroffer.

Appellant's counsel advised the court that appellant wanted to ask the court to appoint the public defender or private appointed counsel in the case. The court responded it would not appoint private counsel unless the public defender was unable to represent him. The court noted that since the public defender's office had previously represented appellant, it appeared it could represent him but that appellant had chosen to relieve that office and have new and different counsel at his own expense. The court stated that no good reason had been presented why appellant should be returned to the public defender's office which was over burdened, it was day six of 10 heading for trial, and a jury would be ordered in two days.

On Friday, January 7, 2005, defense counsel informed the court there was a request from appellant to either have a public defender reappointed or have a "conflict attorney." In response, the court indicated to the prosecution it was "inclined to listen to [appellant] and learn for [itself] if there is some problem of such magnitude that, in fact, [the court] should [accede] to his request." The record indicates that the prosecution stepped out of the courtroom.[3]

The court addressed appellant stating, "I'm told that you want to ask this court to relieve [defense counsel] of further obligation to you because you

---

[3] The sealed reporter's transcript states it is a transcript of "*Marsden* proceedings."

feel either that he's not representing you in an effective way or that there is such a conflict between the two of you that you cannot appropriately work together. Is that basically what's on your mind, sir? Just yes or no to start out." When appellant stated yes and that he was willing to speak, the court informed him, "Then I'm telling you what you need to do . . . is to convince [the court] what is the basis for this request that you believe that [the court] should be relieving [defense counsel] of the obligation that he's undertaken at your request—you have already relieved public defender. You asked for him. You or someone on your behalf has paid for his services, and now you're saying you don't want him any more. So let me have you go forward now to tell me why you think the public defender or some other attorney should be appointed by the court to represent you."

Appellant responded the first point of disagreement was that from the second court appearance he had asked his counsel to make a suppression motion pursuant to Penal Code section 1538.5 and counsel had not followed that request. Appellant added that he and his counsel had not been able to agree on anything because appellant insisted that counsel present the suppression motion. Counsel answered "he was 100% sure if that motion were to be presented it was going to be denied [by the court]." Appellant stated that he had asked his attorney "for Carlos Oliveros, who was also a passenger in the vehicle in which [they] were in." The court inquired whether he was a defense witness to which appellant answered, not necessarily, but he wanted to know where he was. The court indicated that had nothing to do with whether his attorney would be relieved. Appellant added, "I didn't get the answer for which I had paid for the service, so I don't want to continue being with him."

In denying appellant's motion the court stated, "No matter that you would like to have a motion to suppress, this attorney and any other attorney who represents you would not be obligated to run that motion just because you wanted it run. The attorney has to evaluate what would happen, how it would affect you, what's the likely outcome of the motion and other things that Mr. Montanez may have discussed with you. So I will not relieve you of Mr. Montanez's representation because he had a different point of view about whether or not to run a 1538.5 motion. Secondly, even if you'd like to know where Carlos Oliveros is and you feel in some way it would benefit you personally, your attorney is not an investigator. He has no obligation to try to look for people who aren't people that would be used for trial or for some other defense purpose or to provide information that would assist in your defense. So the fact that he hasn't been able to or has chosen not to locate Carlos Oliveros is not grounds for the court to relieve him from further representation of you; and so I decline to do so."

■ Our Supreme Court has stated, "The right of a criminal defendant to counsel and to present a defense are among the most sacred and sensitive of our constitutional rights. [Citation.] While we have recognized competing values of substantial importance to trial courts, including the speedy determination of criminal charges, the state should keep to a 'necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources' [citation]. A criminal defendant's right to decide how to defend himself should be respected unless it will result in 'significant prejudice' to the defendant or in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citation.] In other words, we demand of trial courts a 'resourceful diligence directed toward the protection of [the right to counsel] to the fullest extent consistent with effective judicial administration.' [Citation.]" (*People v. Ortiz* (1990) 51 Cal.3d 975, 982–983 [275 Cal.Rptr. 191, 800 P.2d 547].)

■ "The right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this state [citations], and is governed by Code of Civil Procedure section 284, subdivision 2 [citations].[4] The right to discharge retained counsel is based on ' "necessity in view both of the delicate and confidential nature of the relation between [attorney and client], and of the evil engendered by friction or distrust." ' [Citation.] In order to ensure effective assistance of counsel, a nonindigent defendant is accorded the right to discharge his retained attorney: 'the attorney-client relationship . . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty.' [Citation.] Thus, we conclude that the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain." (*People v. Ortiz, supra*, 51 Cal.3d at p. 983, fn. omitted.)

■ "A nonindigent defendant's right to discharge his retained counsel, however, is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]. . . . [¶] While we do require an *indigent* criminal defendant who is seeking to substitute one *appointed*

---

[4] Code of Civil Procedure section 284 provides, "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] . . . [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

attorney for another to demonstrate either that the first appointed attorney is providing inadequate representation [citation], or that he and the attorney are embroiled in irreconcilable conflict [citation], we have never required a *nonindigent* criminal defendant to make such a showing in order to discharge his *retained* counsel." (*People v. Ortiz, supra,* 51 Cal.3d at pp. 983–984.)

As appellant contends, the trial court here held what was in essence a *Marsden* hearing, requiring appellant to demonstrate his counsel was providing inadequate representation or that he and his attorney were embroiled in an irreconcilable conflict. Upon demand by the trial court and in the absence of the prosecuting attorney, appellant stated his reasons for wanting to discharge his retained counsel: he disagreed with his counsel regarding trial tactics; he wanted his attorney to make a suppression motion and to contact Mr. Oliveros, the third person in the van at the time of appellant's arrest and the person from whom appellant stated he purchased the drugs; and he believed he was not getting the service for which he was paying this privately retained counsel.

The trial court denied appellant's motion, finding the difference in trial tactics was not a sufficient reason to discharge counsel. Since appellant's counsel was not appointed counsel but rather retained counsel, this *Marsden* hearing was "the inappropriate vehicle in which to consider appellant's complaints against his retained counsel." (*People v. Lara* (2001) 86 Cal.App.4th 139, 155 [103 Cal.Rptr.2d 201].)

A case with similar facts, *People v. Munoz* (2006) 138 Cal.App.4th 860 [41 Cal.Rptr.3d 842], recently reversed defendant's conviction because the trial court erred in addressing the defendant's request to relieve his retained attorney utilizing the *Marsden* standard, as compared to the standard enunciated in *People v. Ortiz, supra,* 51 Cal.3d 975. In *Munoz,* the defendant made his request after conviction but before sentencing. The Attorney General argued the stricter *Marsden* standard should be utilized but the Court of Appeal disagreed: "First of all, there is nothing in *Ortiz* that suggests it is limited to the pretrial context. To the contrary, the Supreme Court framed its holding in broad terms: '[W]hen a criminal defendant makes a timely motion to discharge his retained attorney he should not be required to demonstrate the latter's incompetence, as long as the discharge will not result in prejudice to the defendant or in an unreasonable disruption of the orderly processes of justice.' [Citation.]" (*People v. Munoz, supra,* 138 Cal.App.4th at p. 867, citing *People v. Ortiz, supra,* 51 Cal.3d at p. 979.)

Respondent argues that although the trial court did not expressly make findings upon which to deny appellant's request to discharge retained counsel, the record demonstrates the trial court "believed that the motion was

untimely and would result in 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case' " and that was the basis for the denial of the motion. The Attorney General made the same argument in *Munoz* and it was rejected: "That brings us to the issue of timeliness. According to the Attorney General, defendant's motion to relieve [counsel] was untimely because he waited until after the verdict to make it. The Attorney General notes that had [counsel] been relieved at that juncture, 'new counsel would have [had] to order all the transcripts and review them in order to file a motion for a new trial.' However, this does not mean substantial delay in the administration of justice was inevitable. While the trial court may have been correct *had it made such a finding, there is nothing in the record to suggest any such inquiry was made.* The trial court, quite reasonably, but we think incorrectly, *assumed* them to be the case—as it would be in many cases. [¶] '[A] court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. [Citation.]' . . . 'To exercise the power of judicial discretion [in ruling on motion to relieve retained counsel], all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision.' [Citation.] Furthermore, 'The trial court . . . must exercise its discretion reasonably: "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." [Citation.]' [Citation.]" (*People v. Munoz, supra,* 138 Cal.App.4th at p. 870, italics added.)

 In this case, there appears to have been an adequate basis to deny appellant's late request for appointed counsel. As we have seen, the request was made almost immediately before jury selection was to begin in a two-defendant case. It is almost inconceivable that the public defender (or alternate counsel) would be able and willing to defend the case without a material postponement of the trial date, a circumstance that may have justified denial of the request. But, as in *Munoz,* the trial court made no inquiry on the point and did not refer to it in its decision to deny appellant's request. Instead, its decision appears to have been based entirely on application of a *Marsden* analysis. As we also have discussed, that does not suffice in a case such as this, when the defendant is represented by retained counsel and is or may be eligible to have appointed counsel.

Because the trial court utilized the wrong standard, it did not adequately address the issue of delay. Reversal is automatic where, as here, a defendant has been deprived of his right to defend with counsel of his choice. (*People v. Ortiz, supra,* 51 Cal.3d at p. 988.)

## DISPOSITION

The judgment is reversed.

Epstein, P. J., and Willhite, J., concurred.