Filed 1/6/16  P. v. Aguilera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NESTOR AGUILERA,<br><br>    Defendant and Appellant. | F068828<br><br>(Super. Ct. No. 11CM2048)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Thomas DeSantos, Louis F. Bissig,* John G. O'Rourke,* and Michael J. Reinhart, Judges.

Matthew A. Siroka, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and David A. Lowe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Retired judge of the Kings Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

# INTRODUCTION

Defendant Nestor Aguilera entered into a plea agreement, admitting one count of rape of a victim under 14 years, defendant being older than the victim by more than seven years (Pen. Code,[1] §§ 269, subd. (a)(1), 261, subd. (a)(2), count 7) and lewd and lascivious conduct on a victim under age 14 (§ 288, subd. (a), count 24).[2] Pursuant to the plea agreement, defendant received a stipulated sentence of 15 years to life on count 7 and a consecutive sentence of three years on count 24. The remaining counts were dismissed.

Defendant contends on appeal the trial court violated his due process rights for failing to have him properly evaluated for his disability by the Regional Director of the Central Valley Regional Center, Inc. (Regional Center) or another qualified expert pursuant to section 1369. Defendant contends the trial court erred in not allowing him to discharge his retained counsel. Defendant argues that even though he had retained counsel, the trial court erred in failing to conduct a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) because defendant was indigent, and the trial court further erred for failing to appoint an independent attorney for all purposes to investigate a potential motion to withdraw his plea pursuant to *People v. Sanchez* (2011) 53 Cal.4th 80, 87-91. Defendant finally contends his retained counsel was ineffective for failing to present evidence in support of defendant's motion to withdraw his plea.

We conclude the trial court erred in failing to allow defendant to discharge his retained counsel pursuant to *People v. Ortiz* (1990) 51 Cal.3d 975, 982 (*Ortiz*) and *People v. Lara* (2001) 86 Cal.App.4th 139, 156-158 (*Lara*). The error requires

---

[1]Unless otherwise designated, statutory references are to the Penal Code.

[2]Because the issues raised by the parties do not involve the facts of the underlying offenses, we do not recount them.

conditional reversal of the judgment.  We discuss defendant's contentions involving his mental disability and physical illnesses to guide the trial court on remand.

## PROCEEDINGS

### *Initiation of Criminal Proceedings*

On July 5, 2011, a felony complaint was filed against defendant alleging he had committed multiple sexual offenses against two victims who were minors.  On the same date, Maria Sanchez, a counselor and service manager with the Regional Center, faxed a letter to the Kings Superior Court stating her understanding that defendant would be appearing in court that day.  Sanchez informed the court defendant was a client of the Regional Center under the diagnosis of mild mental retardation and suffered from hypertension, thyroid and chronic kidney disease, and had a kidney transplant in 2007.

### Marsden *Hearing*

On Friday, June 22, 2012, defendant's retained counsel, Antonio Reyes, informed Judge Bissig defendant wanted the opportunity to hire a new attorney.  Reyes told defendant that if he did so, the new attorney would have to be ready to go to trial after a weekend prior to trial.  The trial court conducted what it called a *Marsden* hearing outside the presence of the prosecutor.

During the hearing, Reyes explained he had reviewed everything with defendant. Defendant told the court the accusations against him were not true, he was "being accused of 20 years as if [he] would have killed someone," he was not the person everyone thought he was, and the prosecutor had a cold heart.  Defendant thought he was being accused without any proof.  Defendant thought Reyes believed the alleged victims more than Reyes believed defendant.  Defendant did not believe Reyes helped him.

The court explained to defendant that Reyes was very experienced and it was his job to relate the charges and evidence to defendant, explain them to defendant, and to give an assessment of how believable he thinks the witnesses would be during their testimony.  Reyes was a messenger.  The court advised defendant that he had a right

3.

under the Constitution to be represented by an attorney of his own choosing; defendant could make a change, but doing so would not automatically entitle defendant to a continuance. The court did not believe as a practical matter that defendant would be able to find a competent attorney willing to take his case on such short notice.

Reyes explained the prosecutor had provided him with information on Evidence Code section 1108 issues in January 2012, which had necessitated a continuance. It involved evidence from a police report dating back 10 years. Recently, a statement had been obtained from a witness and counsel received it only a few days earlier. Reyes met with defendant the day before and discussed the entire report with him. Reyes told defendant this evidence would not help defendant's case and he should reconsider the prosecutor's offer of a plea bargain.

Defendant said if he got another attorney, it was a difficult situation because that attorney would have to be prepared by Monday. Defendant again said he did not know why people would think badly about him. The court found no indication of inadequate representation of counsel. Defendant made no direct or indirect criticism of Reyes or his representation.

### Suspension of Proceedings

During a hearing before Judge Tarter on November 2, 2012, Reyes informed the court defendant was having "some serious memory issues." Reyes told the court defendant said he was no longer receiving medications previously given to him and he could not comprehend things counsel discussed with him. Reyes was very concerned about defendant's mental status and requested the appointment of a psychiatrist to examine defendant pursuant to section 1368. Reyes explained when he went over things with defendant, defendant could not recall what he was told. Defendant also complained about hearing people talking to him. The court set the matter over for the psychiatric evaluation and report.

Dr. Luis Velosa examined defendant on November 14, 2012. Prior to the examination, Dr. Velosa reviewed: (1) a report from a private investigator who had contacted Dr. Carolyn Sharp from the Regional Center in March 2012, (2) the Regional Center reports, including one from October 2010, and (3) the police reports of the alleged offenses. Dr. Velosa stated he obtained defendant's demographic data and medical history directly from defendant, whose descriptions were clear, coherent, and appropriate. Defendant described his living arrangements over the past five years and his studies in high school. Defendant could read and write in Spanish.

Defendant worked as a janitor. He had problems with his kidneys and denied any problems with drugs and alcohol. Defendant said he had a kidney transplant. Prior to the transplant, defendant received dialysis. He recently suffered stomach pains, nausea, vomiting, and difficulty going to the bathroom. Defendant was cooperative during the psychiatric examination, his command of Spanish was quite adequate, and he was able to express his opinions and describe his ideas rationally and coherently. Defendant also had the ability to use verbal abstractions and describe historical events having a good use of time spans such as years and months.

Defendant understood the roles of his attorney, the prosecutor, the judge, and the jury. Dr. Velosa stated defendant was alert and oriented as to time, place, and person. His speech was rational, coherent, and goal oriented. Dr. Velosa found defendant's thinking process adequate without evidence of looseness of associations or auditory or visual hallucinations. There was also no evidence of "delusional material" or of a mood disorder. Defendant could adequately modulate his emotions and there was no evidence of suicidal ideations.

Dr. Velosa stated defendant had no history of physical disorder, though defendant had informed him of his kidney transplant and the Regional Center had sent reports concerning defendant. Dr. Velosa found defendant free of a psychiatric disorder that could impair his concept of reality. Defendant had never taken psychiatric medications

5.

and had never been a patient in a psychiatric hospital. Dr. Velosa noted the defendant was a client of the Regional Center and suffered from borderline intellectual functioning. Although diagnosed as having mild mental retardation, Dr. Velosa found defendant functioned behaviorally "on a much higher intellectual level."

Dr. Velosa concluded defendant was presently able to understand the nature and purpose of the proceedings, was capable of cooperating in a rational manner with his counsel, and was competent to stand trial. On December 5, 2012, the parties submitted the issue of defendant's competency to stand trial on Dr. Velosa's report. The trial court accepted Dr. Velosa's report and found defendant competent to stand trial.

### Change of Counsel

Defendant needed new counsel because Mr. Reyes had been appointed to the bench. On June 4, 2013, the court appointed Ralph Kaelble to represent defendant. On June 14, 2013, Albert Garcia appeared with defendant and Kaelble and indicated he needed time to assess whether to represent defendant as retained counsel. On June 21, 2013, Kaelble was relieved as appointed defense counsel and Albert Garcia was substituted as defendant's retained counsel.

### Change of Plea

On October 21, 2013, the parties entered into a plea agreement before Judge Reinhart. Under the terms of the agreement, defendant admitted count 7 (§§ 269, subd. (a)(1), 261, subd. (a)(2)) with a stipulated sentence of 15 years to life and count 24 (§ 288, subd. (a)) with a stipulated consecutive sentence of three years. The trial court advised defendant of his constitutional rights pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122. Defendant stated he had discussed these rights with his attorney, Garcia. When the court asked defendant if he had questions, defendant replied, "Yes," then had a brief discussion off the record with Garcia. After these discussions with Garcia, defendant told the court he had no questions about his rights and waived them.

6.

The court reviewed with defendant the consequences of his plea. During this exchange, defendant indicated he did not understand what the court meant when it explained the conditions of parole, including that defendant could serve a year in prison for a violation of his parole. Garcia and defendant had another discussion off the record. The court resumed its explanation of the consequences of entering into the plea agreement. When advised of the immigration consequences of the change of plea and asked if he had discussed these with Garcia, defendant replied, "No." After a brief discussion with defendant, Garcia and defendant told the court they had just discussed the immigration consequences of defendant's change of plea.

The court explained to defendant the waiver the parties were entering into pursuant to *People v. Harvey* (1979) 25 Cal.3d 754. When the court asked defendant if he had enough time to discuss the bargain with Garcia, defendant replied, "No." After a brief discussion with Garcia, defendant said he did have enough time to discuss the plea agreement with Garcia. Defendant said he was satisfied with Garcia's services and advice. Defendant said he had received no threats to himself or loved ones or promises other than what was stated in open court to change his plea. Defendant said he understood what he was charged with and understood his rights and defenses.

When asked if he was taking any medications, was under the influence of any substance, or suffering from any medical conditions that could impair his ability to understand the plea or what was happening in court, defendant replied: "Well, actually, I don't know because I take quite a bit of medication, and I don't know what I'm being given." Garcia explained he was aware defendant took medication, but did not know what kind.

When the court asked defendant if he was suffering from anything that would prevent him from understanding what was occurring, defendant replied: "Yeah. Actually, the truth is … that I don't understand—I don't learn a lot of things." The court

had Garcia talk to defendant to determine whether defendant suffered from anything that would prevent him from understanding the proceedings.

After a discussion with defendant, Garcia told the court there was nothing that would impair defendant's ability to understand the plea agreement or the proceedings. Garcia added there was obviously discussion going back and forth concerning the negotiations. This included many questions and concerns, but Garcia believed he was able to communicate well with defendant. Garcia was satisfied his client understood the charges.

Defendant pled no contest to counts 7 and 24. The court found an express, knowing, and intelligent waiver of statutory and constitutional rights by defendant. The court further found defendant freely and voluntarily entered into the plea agreement, understanding the nature of the charges and the consequences of the plea.

*Commencement of Sentencing Hearing*

The sentencing hearing began on November 15, 2013, before Judge O'Rourke who asked if Garcia and defendant were prepared to proceed to sentencing. Garcia replied that defendant had reported him to the California State Bar since the plea was taken and defendant had also reported Reyes to the bar. Defendant told Garcia he had scared defendant into taking the plea and was not a good attorney. Garcia informed the court, "I don't know if he's requesting ineffective assistance of counsel, but I gather from reporting me to the State Bar, I believe that's what his objectives were."

When the court asked if they should have a *Marsden* hearing, Garcia replied he did not know if a *Marsden* hearing would suffice, it was up to the court. The court asked Garcia if defendant had a problem with Garcia's representation. Garcia replied that if defendant had a problem with him as counsel, Garcia could not prepare a motion for defendant to withdraw his plea based on ineffective assistance of counsel. While Garcia was ready to go forward with sentencing, he thought independent counsel would have to be appointed. Judge O'Rourke decided to send the matter back to Judge Reinhart and to

8.

appoint independent counsel to investigate any potential claim for ineffective assistance of trial counsel.

### *Independent Counsel's Declaration*

James Oliver investigated whether there was ineffective assistance of trial counsel. Oliver filed a declaration stating he had been appointed by the court to assess whether defendant had a legal basis to withdraw his no contest plea. Oliver personally interviewed defendant to assess whether Garcia had been ineffective in his representation of defendant. According to Oliver, defendant did not claim Garcia improperly represented him, only that he wanted Garcia to visit him more frequently. When asked if he made a mistake in admitting the allegations, defendant said he wished he had gone through with a jury trial and asserted his innocence. Defendant explained that 18 years was too long and he wanted a better deal with less time. Oliver did not interview Garcia. Oliver read the reporter's transcript of the change of plea hearing. Based on the transcript, Oliver concluded defendant entered the no contest plea intelligently, freely, and voluntarily. In Oliver's opinion, there was no basis for defendant to withdraw his plea.

### *Sentencing Hearing*

On December 18, 2013, Garcia and Oliver appeared at the continued sentencing hearing. Judge Reinhart first addressed the potential motion to withdraw defendant's plea. Garcia said defendant had earlier indicated he wanted to withdraw his plea on different grounds. One was that he was under different types of medications. Garcia obtained a list of those medications from the jail. Defendant also asserted he did not feel Garcia represented his interest and this was how Oliver was appointed by Judge O'Rourke. Garcia said he felt he had a conflict of interest with defendant.

Garcia told the court he had nothing to add to Oliver's declaration and submitted the matter for the court. Oliver stated as he finished his interview with defendant, Oliver suggested to defendant that it sounded as though he made a bad choice and was sorry he

9.

changed his plea. Defendant responded he did not want a trial, he wanted a better deal. Oliver submitted the matter on his declaration.

Garcia explained that on the date set for trial, he was ready to proceed. Defendant was on the fence about whether to have a trial or to take the plea bargain. During the change of plea proceeding, defendant indicated he was taking medication. The court addressed the issue by asking counsel to look into whether defendant could form a proper opinion. Garcia believed defendant's position was that the medications affected his ability to make a proper judgment call. Garcia did discuss this point with defendant who said he was ready to proceed with the plea, but since then felt he was not able to enter into a plea. Garcia then added: "And, again, the medication that he—I'm not a physician, I'm not a psychiatrist, I have no knowledge as to what or how these medications will affect that. I just bring it to the Court's attention because [defendant] wants me to bring it to the Court's attention that he does want to withdraw his plea and it is based on that." Judge Reinhart observed he, too, was not a pharmacist or a physician and did not know the effect, if any, the medications would have on defendant.

Garcia responded, "Exactly. I just don't know how to address it. And short of call[ing] an expert, which I don't intend to do, this came—we did address it generally that he was taking medication and so after that we proceeded and you felt he was able to still proceed. And when I received the list I thought, well, it could be significant, it might not be significant. But nevertheless I'll read it on the record if the Court allows me to." The court had counsel submit the list as an exhibit.[3]

The court noted it took defendant's plea and, from its own recollection and the reporter's transcript, found defendant responded appropriately to the questions asked and

---

[3]Although the parties refer to 11 medications, the list submitted to the court contained 10 medications. All the medications were administered in the morning between 4:00 a.m. and 5:00 a.m. Three of the medications were also given in the evening. The medications were: metoprolol 25 mg., prednisone 10 mg., Prilosec 20 mg., vitamin D3 1000 IU, Synthroid 75 mcg., Procardia 90 mg., lisinopril 10 mg., folic acid 1 mg., Rapamune 1 mg., mycophenolate 1000 mg.

there was nothing in his behavior that would lead one to believe he did not fully understand what was happening.  The court found defendant made a knowing, intelligent, and voluntary change of plea.  The court found no legal basis for him to withdraw his plea and denied the motion.

**DISCUSSION**

**1.    Representation By Retained Counsel**

*Introduction*

Defendant raises several issues related to his attorney's representation.  Because defense counsel was retained, not appointed, the trial court erred in failing to follow the procedures set forth by the California Supreme Court in *Ortiz* and our court in *Lara*.  The error requires conditional reversal of the judgment.  Because defense counsel was retained, we reject defendant's additional contention the trial court should have held a *Marsden* hearing at the commencement of the sentencing hearing in November 2013.

*Legal Principles*

In *Ortiz*, *supra*, 51 Cal.3d 975, our high court held a nonindigent defendant was not required to satisfy the requirements of *Marsden* if he or she wished to discharge retained counsel.  *Ortiz* found this right was not absolute and the trial court retained discretion to deny the motion if discharging counsel would cause the defendant significant prejudice by forcing him or her to trial without adequate representation, or, if the discharge was untimely and would result in a disruption of orderly judicial process.  (*Id*. at p. 982.)

A nonindigent defendant does not have to show inadequate representation or embroilment in an irreconcilable conflict with retained counsel.  (*Ortiz*, *supra*, 51 Cal.3d at pp. 984, 987; *People v*. *Maciel* (2013) 57 Cal.4th 482, 512; *People v*. *Sanchez*, *supra*, 53 Cal.4th at p. 89.)  In light of the importance of the right to counsel of choice, *Ortiz* found a court must not allow a defendant's indigence to prevent the timely discharge of

retained counsel the defendant no longer wishes to have represent him or her. (*Ortiz*, *supra*, at pp. 984, 987.)

Because the right to discharge retained counsel is broader than the right to discharge appointed counsel, it is error to conduct a *Marsden* hearing and apply the *Marsden* standard for the discharge of retained counsel. The trial court should conduct a hearing to determine whether the defendant seeks to discharge retained counsel. (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429; *People v. Hernandez* (2006) 139 Cal.App.4th 101, 108-109.) If a defendant has made a timely motion to discharge his or her retained counsel, the court can only consider the defendant's indigent status after retained counsel is dismissed. (*Ortiz*, *supra*, 51 Cal.3d at p. 987.) The trial court can then proceed to the appointment of substitute counsel pursuant to section 987.2. (*Ortiz*, *supra*, at pp. 987, 989-990.) In *People v. Sanchez*, *supra*, 53 Cal.4th at pages 87-91, the California Supreme Court found that where a defendant seeks to challenge the effectiveness of his or her *appointed* trial counsel and independent counsel must be appointed to investigate the claim, the attorney becomes the defendant's representative for all purposes and all subsequent proceedings.

In *Lara*, *supra*, 86 Cal.App.4th 139, this court reviewed a full *Marsden* hearing conducted by the trial court where the defendant sought to substitute his retained counsel before trial. Following *Ortiz*, we found the trial court improperly applied the *Marsden* standard for substitution of retained counsel. (*Lara*, *supra*, at pp. 152-156.) In *Lara*, defense counsel told the court he believed his client was making a *Marsden* motion. (*Lara*, at pp. 157-158.) At the conclusion of a *Marsden* hearing, the trial court found a mere tactical difference between the defendant and his attorney and denied the request to substitute counsel.

*Lara* acknowledged it was a close question concerning whether the defendant actually wanted to discharge his attorney. (*Lara*, *supra*, 86 Cal.App.4th at pp. 156-158.) This court concluded there was an improper *Marsden*-type hearing but we could rely on

12.

the trial court's "factual interpretation of the situation as involving a request by appellant to discharge his defense attorney and obtain a new attorney to represent him …." (*Lara*, *supra*, at p. 158.) After reviewing the *Marsden* hearing, we found the defendant had serious tactical disputes with his retained counsel concerning how to proceed at trial. (*Lara*, at pp 156-158.) The disputes included whether the defendant should testify at trial and whether his accomplice should be called as a defense witness. (*Id*. at p. 147.) We concluded the defendant's complaints about his attorney "were sufficient to implicate his right to discharge his retained counsel, and either hire a new attorney or request the appointment of counsel." (*Id.* at p. 158.)

*Lara* further held any mistake by defense counsel's misunderstanding that *Marsden* was applicable to a case involving retained counsel could not be resolved by the doctrine of invited error. (*Lara*, *supra*, 86 Cal.App.4th at p. 165.) Because the defendant articulated reasons to discharge his counsel and the trial court misapplied *Marsden*, the case had to be reversed. (*Id.* at pp. 165-166.) Reversal is automatic where the trial court applied the wrong standard and the defendant has been deprived of his or her right to defense with counsel of choice. (*Ortiz*, *supra*, 51 Cal.3d at p. 988; *People v. Hernandez*, *supra*, 139 Cal.App.4th at p. 109; *People v. Munoz* (2006) 138 Cal.App.4th 860, 870-871; see *People v. Vasquez* (2006) 39 Cal.4th 47, 69, fn. 12.)

It was error for the trial court here to appoint James Oliver without first learning from defendant what he desired to do.[4]

---

[4]Where an appointed attorney is substituted to investigate a claim of ineffective assistance of trial counsel, the proper procedure is to substitute a new appointed attorney to investigate the claim and for all other purposes. (*People v. Sanchez*, *supra*, 53 Cal.4th at pp. 89-90.) We reject defendant's contention on appeal the trial court should have appointed a new attorney for all purposes as set forth in *Sanchez*. The People correctly argue the procedure explained in *Sanchez* is employed when a defendant has appointed counsel and there is an assertion of ineffective assistance of trial counsel.

*Analysis*

We initially note the timeliness of a motion to replace counsel and the potential disruption of the judicial process are relevant to the instant action. Granting a motion to dismiss defense counsel at the time of sentencing would not have caused any prejudice to defendant. Defendant's conflict with Garcia occurred during and after defendant's change of plea. Defendant was not about to begin trial nor was he in the middle of trial, and he was prepared to continue hearings when necessary so there was no potential disruption to orderly judicial process.

As in *Lara*, the question concerning whether defendant wished to discharge Garcia is ambiguous. The trial court never directly asked defendant if he wanted to dismiss Garcia. Garcia informed the court on November 15, 2013, that defendant had reported him to the California State Bar after the plea was taken. Defendant believed Garcia had scared defendant into taking the plea and was not a good attorney. Garcia stated, "I don't know if he's requesting ineffective assistance of counsel, but I gather from reporting me to the State Bar, I believe that's what his objectives were."

When the trial court asked if there should be a *Marsden* hearing, Garcia replied he did not know if a *Marsden* hearing would suffice and left the decision to the court. The court asked Garcia if defendant had a problem with his representation. Garcia said that if defendant had a problem with him as counsel, Garcia could not prepare a motion for defendant to withdraw his plea based on ineffective assistance of counsel.

At this juncture, the court appointed Oliver to represent defendant on his potential motion to withdraw his plea, without first asking defendant if he sought to discharge Garcia. This procedure was flawed under *Ortiz* and *Lara*. The proper procedure for the court was to determine if defendant wanted to dismiss Garcia. Though defendant may have been indigent, his family had been able to retain both Reyes and Garcia. Defendant should have been given the opportunity to seek his own retained counsel. If defendant or

14.

his family could not afford to retain a new attorney, only then should the trial court have appointed Oliver as counsel as set forth in *Ortiz* and section 987.2.

The defendant's reliance on *People v. Sanchez, supra*, 53 Cal.4th at pages 87-91 is misplaced. As noted above, Oliver was prematurely appointed to investigate a potential claim of ineffective assistance of trial counsel by Garcia. Only after discharging Garcia and determining defendant was indigent should a new attorney be appointed to represent a defendant.[5] Pursuant to *Sanchez*, a new appointed attorney would then represent defendant for all purposes in future hearings. (*Ibid*.) Defendant also argues in his opening brief that because he was indigent, the trial court and this court should apply the *Marsden* procedure in his case. This procedure was expressly rejected by our Supreme Court in *Ortiz*. (*People v. Ortiz, supra*, 51 Cal.3d at pp. 982-987.) The rulings of the Supreme Court are binding on all lower courts. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

At the continued sentencing hearing on December 18, 2013, Garcia and Oliver appeared. The court addressed the potential motion to withdraw defendant's plea. Several things are clear from Garcia's presentation to the court. Garcia explained defendant sought to withdraw his plea because he was taking numerous medications and did not feel Garcia was representing defendant's interests. Oliver told the court defendant did not want a trial, he wanted a better deal. Garcia stated he was not a physician, did not know how the medications could affect his client, did not know how to address the issue, and did not plan to obtain a medical opinion to support the defendant's motion to withdraw his plea.

---

[5]Earlier in the proceedings, when this case was originally scheduled for trial, Judge Bissig held what he called a *Marsden* hearing. Although not accurately denoted, Judge Bissig focused on the critical issue that had to be resolved when he directly asked defendant if he sought to dismiss his then counsel, Mr. Reyes. Judge Bissig correctly analyzed the timing of the potential substitution of counsel and defendant elected to keep his lawyer at that time.

15.

Although defendant did not directly state he wanted to discharge Garcia, over the course of two hearings in November and December 2013, everything Garcia told the court pointed to a complete rift in the attorney-client relationship over tactics. This disagreement did not relate only to a potential claim of ineffective assistance of trial counsel, it also involved defendant's assertion he could not enter into a knowing, intelligent, and voluntary plea agreement because of his medical condition and the multiple prescribed medications he was taking.

Garcia represented his client was dissatisfied with his representation and defendant felt forced by Garcia into entering the plea agreement. Defendant had reported Garcia to the State Bar and wanted Garcia to file a motion to withdraw his plea, based on the effect of all the medications he was taking. Garcia acknowledged he did not know the effect, if any, of the medications on defendant's ability to understand the plea agreement but declined to consult a doctor in pursuit of defendant's motion to withdraw his plea.

Garcia further told the court he did not know what to do. It is clear Garcia was refusing to investigate whether there was medical support for defendant to withdraw his plea. Although defendant did not expressly tell the court he wanted to dismiss Garcia, and was never directly asked if he wished to do so, the evidence adduced at the continued sentencing hearing leads us to the conclusion this is precisely what defendant sought. We had to draw similar inferences from the evidence adduced at the *Marsden* hearing in *Lara*. The facts here are more compelling than those in *Lara* in support of defendant seeking to discharge his retained attorney. We conclude, therefore, the trial court erred in failing to permit or offer to defendant the option of discharging his retained counsel without having to establish ineffective assistance of counsel through a *Marsden* hearing. This error affected defendant's right to counsel as explained in *Ortiz* and *Lara*, necessitating conditional reversal of the judgment.

**2.      Defendant's Disability and Illnesses**

We do not decide the issues concerning whether defendant had a colorable claim to withdraw his plea, but remand the case without prejudice to defendant to raise these issues and any other points affecting his competency as well as his ability to enter into a plea bargain or to understand the terms of a plea agreement.[6] We review two factual issues affecting the defendant's competency for guidance to the trial court on remand. These are (1) defendant's mental status resulting from the diagnosis of mild retardation by the Regional Center, and (2) the effect, if any, of the 10 medications defendant was prescribed for various health problems including kidney and heart disease.

The Regional Center sent a letter to the court when the criminal complaint was filed indicating defendant was a client and diagnosed with mild mental retardation. The letter further stated defendant had a kidney transplant and suffered from kidney and heart disease. Dr. Velosa was later appointed to evaluate defendant's mental competency when defendant's first counsel, Antonio Reyes, informed the court defendant could not remember things he was told. However, Dr. Velosa did not address memory issues in his evaluation of defendant. Further, although Dr. Velosa did not find any indication of mental illness and concluded defendant was competent to stand trial, he made only passing reference to defendant's physical health problems and mild mental retardation. Subsequently, during the change of plea hearing, the proceedings had to be stopped several times for Garcia to explain to defendant what was happening.

Dr. Velosa also referred in his evaluation to reports from the Regional Center concerning defendant's mental retardation diagnosis, but included no information from them. These reports from the Regional Center were not attached to Dr. Velosa's evaluation of defendant and have not been included in the record on appeal. Because the

---

[6]If the *Marsden* standard applied to this case as proposed by defendant, there was more than a colorable claim by defendant to support an inquiry into a motion for him to withdraw his plea. (See *People v. Smith* (1993) 6 Cal.4th 684, 692-693.)

record is not complete, we are unable to determine whether the court erred by failing to appoint the regional director to evaluate defendant for developmental disability, or whether, assuming error, it was harmless. The case is remanded without prejudice to defendant to raise any issue concerning his diagnosis of mild retardation and/or problems with memory already raised in the reports from the Regional Center, or to have an evaluation by the Director of the Regional Center or other qualified evaluator. The trial court and the parties shall be guided by section 1369 and *People v. Leonard* (2007) 40 Cal.4th 1370, 1389-1393.)

Garcia raised the issue of the effect of the medications defendant had been prescribed for heart and kidney problems. Both Garcia and the trial court stated they were unaware of the effects, if any, of these medications on defendant's ability to enter into a knowing, intelligent, and voluntary plea bargain. This point is foundational to whether defendant was competent to enter into a valid plea agreement or to stand trial. The case is also remanded without prejudice to defendant to have an evaluation from a qualified physician to determine if his medications and general health condition have any effect on his ability to understand the proceedings, to assist his counsel, or to enter into a valid plea agreement.

## DISPOSITION

The judgment is conditionally reversed and the case remanded for further proceedings as follows. On remand the trial court shall conduct a hearing to verify whether defendant still seeks to dismiss Mr. Garcia as his counsel. If defendant desires new counsel, the court shall allow defendant to retain new counsel, or if the court determines defendant is indigent, the court shall appoint counsel to represent defendant for all further proceedings. The court shall further grant leave for Mr. Garcia, or new counsel, to investigate all matters related to defendant's disability and competency, as well as whether to file a motion for defendant to withdraw his plea. If defendant files a motion to withdraw his plea and it is granted by the trial court, the case may proceed to

18.

trial or other disposition. If defendant fails to file a motion to withdraw his plea, or files a motion to withdraw his plea and after a hearing the court denies the motion, the court shall reinstate the judgment.

_____
PEÑA, J.

WE CONCUR:

_____
FRANSON, Acting P.J.

_____
SMITH, J.