Filed 10/28/13  P. v. Reyes CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ALEXANDER REYES,<br><br>    Defendant and Appellant. | H036867<br>(San Benito County<br>Super. Ct. No. CR1000425) |

### STATEMENT OF THE CASE

A jury convicted defendant Michael Alexander Reyes of one count of forcible sexual penetration by a foreign object (Pen Code, § 289, subd. (a)(1); count 2),[1] five counts of forcible lewd conduct on a child under the age of 14 (§ 288, subd. (b)(1); counts 3, 5, 7, 9, and 11), 12 counts of forcible rape (§ 261, subd. (a)(2); counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, 24, and 26), three counts of forcible oral copulation (§ 288a, subd. (c)(2); counts 12, 15, and 23), four counts of lewd conduct on a 14-year-old or 15-year-old child  (§ 288, subd. (c)(1); counts 18, 20, 22, and 25), and two counts of aggravated sexual assault on a child (§ 269, subds. (a)(1) & (a)(5); counts 27 and 28). The trial court sentenced defendant to a term of 30 years to life plus a consecutive term of 95 years and eight months.

---

[1] Subsequent unspecified statutory references are to the Penal Code.

On appeal, defendant makes the following arguments: (1) there was insufficient evidence of force or duress to support counts 2-17, 19, 21, 23, 24, and 26-28, and those counts should accordingly be reversed or reduced to non-forcible lesser-included offenses; (2) counts 2-17, 19, 21, 23, 24, and 26-28 must be reversed due to the trial court's failure to instruct on lesser-included non-forcible offenses; (3) the trial court prejudicially erred in admitting a letter written by the victim; (4) remand for resentencing on all counts is required because the trial court applied the wrong standard in ruling on defendant's motion to discharge retained counsel; (5) remand for resentencing on counts 12, 13, 15, 16, 21, and 23 is required because there was insufficient evidence of separate occasions to support the imposition of full-term consecutive sentences under section 667.6, subdivision (d); (6) defendant was improperly convicted in count 2 because that count was a lesser-included offense of count 27, and defendant was improperly convicted in count 4 because that count was a lesser-included offense of count 28; (7) the sentence for count 3 must be stayed pursuant to section 654 because count 3 involved the same act of digital penetration punished in count 27.

We conclude that there was insufficient evidence of force or duress to support counts 2-17, 19, 21, 23, 24, and 26-28. We accordingly reverse the convictions in counts 27 and 28 and reduce the convictions in counts 2-17, 19, 21, 23, 24, and 26 to lesser-included non-forcible offenses. Although we conclude that the trial court erred in admitting the victim's letter pursuant to Evidence Code section 356, we believe the admission of the letter was harmless. Finally, we conclude that the trial court erroneously denied defendant's post-conviction motion to discharge retained counsel, and we therefore reverse the judgment and remand for resentencing on all counts with defendant afforded the opportunity to be represented by a new attorney.[2]

---

[2] Because we reverse the convictions in counts 27 and 28 and reduce counts 2-17, 19, 21, 23, 24, and 26 to lesser-included non-forcible offenses, we need not address

2

We note that the reversal of counts 27 and 28 and the reduction of the remaining forcible offenses to non-forcible offenses should have little practical impact on the actual time that defendant serves in prison. Defendant's advanced age, combined with the statutorily-mandated sentences for the non-forcible offenses, will likely lead to a new sentence that will cause defendant to spend the rest of his life in prison.

## STATEMENT OF THE FACTS

Defendant dated Jane Doe's mother for several years. When Doe was seven or eight years old, defendant moved in with Doe and her mother. Defendant lived with Doe and her mother "[o]ff and on" for approximately nine years. Over the course of those years, they moved frequently and lived together in several different houses.

Defendant had sexual contact with Doe from the time Doe was nine years old to the time she was 16 years old.[3] Described below are the sex acts that occurred at each of the houses that defendant shared with Doe and her mother.

### Counts 2, 3, and 27:  San Benito Street in Hollister

When Doe was nine years old, defendant approached Doe in the hallway of their house on San Benito Street in Hollister. He placed his finger in her vagina. Doe "jumped up because it hurt." Defendant then tried to reinsert his finger into Doe's vagina.

---

defendant's argument regarding the trial court's failure to instruct on lesser-included non-forcible offenses. Because we reverse counts 27 and 28, we need not address defendant's argument regarding improper convictions for lesser-included offenses of counts 27 and 28, and we need not address defendant's argument regarding count 27 and section 654. Because we remand for resentencing on all counts, and because we reduce the convictions in counts 12, 13, 15, 16, 21, and 23 to non-forcible offenses not subject to full-term consecutive sentences under section 667.6, subdivision (d), we need not address defendant's argument regarding the sufficiency of the evidence for full-term consecutive sentences on counts 12, 13, 15, 16, 21, and 23.

[3] Doe was 18 years old at the time of trial, and defendant was 56 years old at the time of trial.

3

Doe told her mother that defendant had "touched" her. Doe's mother confronted defendant with the information, and defendant said that he and Doe had been wrestling and playing around.

### Counts 4-11 and 28: Howard Court in Hollister

When Doe was 12 years old, she and defendant were in the kitchen at their home on Howard Court in Hollister, and defendant told her that he "wanted to show [her] how it was done." Defendant said that "it was just going to happen that one time." Defendant then had sexual intercourse with Doe in her mother's bedroom. Doe experienced pain during the intercourse. Defendant was aware that Doe was in pain, and he commented that "it was too tight." Doe "felt comfortable" after the intercourse because defendant assured her that it would happen only that one time.

On Doe's thirteenth birthday, defendant asked Doe if she "wanted to do it." Doe said no. Defendant "kept asking." Doe "just said okay," and they "ended up" having sexual intercourse.

While living at the house on Howard Court, defendant had sexual intercourse with Doe more than 20 times. The intercourse always occurred while Doe's mother was at work.

### Counts 12-16: Pinot Noir Court in Los Banos

When Doe was 14 years old, defendant, Doe, and Doe's mother moved into a house on Pinot Noir Court in Los Banos. While living on Pinot Noir Court, defendant "would want to have sex" with Doe before she went to school. Defendant would call Doe's name, and Doe "already knew he wanted to have sex." Defendant would tell Doe to come into one of the bedrooms, and defendant and Doe "would have sex."

Defendant, Doe, and Doe's mother lived on Pinot Noir Court for seven months. While living on Pinot Noir Court, defendant and Doe had sexual intercourse approximately once a week. On one occasion when they had sexual intercourse, Doe put

4

her mouth on defendant's "private area." On other occasions when they had sexual intercourse, defendant put his mouth on Doe's "private area."

After defendant had sexual intercourse with Doe, Doe would act like it had not happened. Doe explained that she did not want to think about defendant.

Doe felt uncomfortable when she was alone with defendant at the house on Pinot Noir Court. Doe explained that she knew defendant would want to have sexual intercourse if she was alone with defendant.

### Counts 17-26: East First Street in Morgan Hill

When Doe was 15 years old, defendant, Doe, and Doe's mother moved into a house on East First Street in Morgan Hill. They lived in that house for one and a half years, and defendant and Doe had sexual intercourse one to two times a week while living there.

Doe explained that defendant would call her into one of the house's rooms, and she and defendant "would have sex." On many of the occasions when they had sexual intercourse, defendant would also perform oral sex on Doe. Defendant stopped having sexual intercourse with Doe around the time she turned 16 years old.

Doe testified that she did not like being alone with defendant during the time they lived on East First Street. Doe explained that defendant made her feel uncomfortable when they were alone together.

### Facts Pertaining to All Counts

Before having sexual intercourse with Doe, defendant would always kiss her and touch her breasts.[4] On some occasions, Doe "would get on top of him" during the intercourse.

---

[4] The forcible lewd conduct convictions in counts 5, 7, 9 and 11 were based on defendant's acts of kissing Doe and touching her breasts.

5

Doe always refused to have sexual intercourse in her own bedroom. Doe did everything she could to prevent the intercourse from happening in her bedroom.

Sometimes Doe told defendant that she did not want to have sexual intercourse with him. When Doe refused to have sexual intercourse with him, defendant "would get mad" and would not talk to her for a few days. Doe "cared for" defendant, and she did not like it when he would not talk to her.

Doe testified that she and defendant "had good times" together. She explained that she liked to wrestle with defendant. She also enjoyed going on motorcycle rides with defendant.

Doe did not fear defendant. Defendant was protective of Doe, and he told people that he was her father.[5]

Defendant's relationship with Doe's mother was "[o]ff and on" and "[v]ery unstable." Defendant would move out of the houses he shared with Doe and her mother when he "was caught cheating" with other women.

### Doe's Letter to her Mother and the Police Investigation

When Doe was 17 years old, Doe's mother discovered that Doe was involved in a lesbian relationship. Doe's mother did not like Doe's sexual preference, and she did not talk to Doe for a few days. In order to rehabilitate her relationship with her mother, Doe wrote her mother a letter. In the letter, Doe stated that she "turned to girls" because defendant had molested her. After reading the letter, Doe's mother contacted the police.

The police arranged for Doe to place a recorded phone call to defendant. A tape of the call was played for the jury. During the call, Doe told defendant that she was "more comfortable with girls" because of "what happened between" her and defendant.

---

[5] The People assert that Doe "told people that [defendant] was her dad." This is an incorrect statement of the evidence. Doe testified that defendant would "tell everybody that . . . he was [Doe's] dad." Doe never testified that she told people that defendant was her father.

6

Defendant responded, "Why?  You think all boys and men are like that?"  Defendant also stated, "[I]t happened to me when I was a kid."  Doe asked, "If you knew it hurt so bad, why—why did you do it to somebody else?"  Defendant responded, "I think it was just—it was just a sexual thing and—that's exactly what it was."  Defendant continued, "I know . . . we've done some stupid things, but I am sorry. . . .  I love you to death.  And, hey, I mean it.  When you see me the way I am right now, it's pure[,] natural[,] just plain, clean love."

### Expert Testimony

An expert witness testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS).  CSAAS is a "description of unexpected conditions and situations that typically occur in child sexual abuse cases that often are in conflict with many people's preconceived ideas about child sexual abuse."  The expert testified that children who have been victims of sexual abuse often wait to report the crime and continue to interact with the offender.  While children are experiencing sexual abuse, they frequently "act as if nothing is wrong."  A "triggering event," such as a "heated family argument," will often prompt an abused child to report the molestation.

### Defense Evidence

Defendant's daughter, Janelle Reyes, testified that she and Doe were very close friends.  Ms. Reyes frequently saw defendant and Doe interact.  Ms. Reyes never had the impression that Doe did not want to be alone with defendant.  Doe never told Ms. Reyes that she was afraid of defendant.

Defendant's brother, Frank Reyes, also testified for the defense.  Mr. Reyes testified that he and defendant had remodeled a home owned by defendant and Doe's mother.

The defense theory was that Doe fabricated the allegation of child molestation in response to her mother's negative reaction to her lesbian relationship, and that Doe's

7

mother reported the molestation allegation in order to take advantage of defendant's improvements to the house they owned together. The defense alternatively argued that there was no evidence of force or duress.

DISCUSSION

## I. *Sufficiency of the Evidence*

Defendant argues there was insufficient evidence of force or duress to support counts 2-17, 19, 21, 23, 24, and 26-28. The People contend counts 2, 3, 4, and 27 were supported by sufficient evidence of force. The People argue the remaining counts were supported by sufficient evidence of duress.

As explained below, we conclude that there was insufficient evidence of force or duress to support counts 2-17, 19, 21, 23, 24, and 26-28. Consequently, we will reverse the convictions in counts 27 and 28, and we will reduce the convictions in the remaining counts to convictions for lesser-included non-forcible offenses.

### A. *Standard of Review*

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) " '[O]ur task . . . is twofold. First, we must resolve the issue in the light of the whole record—i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements . . . is substantial; it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "[n]ot every surface conflict of evidence remains substantial in the light of other facts." ' [Citation.]" (*People v. Johnson* (1980) 26 Cal.3d 557, 577, italics omitted.)

**B.** *There was Insufficient Evidence of Force to Support Counts 2, 3, 4, and 27*

In count 2 defendant was convicted of forcible sexual penetration by a foreign object in violation of section 289, subdivision (a)(1). In count 3 defendant was convicted of committing a forcible lewd act on a child in violation of section 288, subdivision (b)(1). In count 27 defendant was convicted of aggravated sexual assault on a child in violation of section 269, subdivision (a)(5). The conduct underlying counts 2, 3, and 27 was defendant's act of placing his finger in 9-year-old Doe's vagina.

In count 4 defendant was convicted of forcible rape in violation of section 261, subdivision (a)(2). The conduct underlying count 4 was the act of sexual intercourse that occurred when Doe was 12 years old.

The People argue counts 2, 3, and 27 were supported by sufficient evidence of force because Doe testified that she experienced pain when defendant placed his finger in her vagina. Similarly, the People contend count 4 was supported by sufficient evidence of force because Doe testified that the intercourse was painful. As we will explain, the evidence of pain was insufficient to establish the requisite force.

Section 288, subdivision (b)(1) criminalizes commission of a lewd act on a child "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." Section 289, subdivision (a)(1)(A) and section 269, subdivision (a)(5) prohibit acts of sexual penetration "accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 289, subd. (a)(1); see § 269, subd. (a)(5) [prohibiting "[s]exual penetration, in violation of subdivision (a) of Section 289," on a child under 14 years old by a person who is seven years older than the child].) Section 261, subdivision (a)(2) prohibits sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury."

9

As used in section 288, subdivision (b)(1), the term "force" means " 'physical force substantially different from or substantially in excess of that required for the lewd act.' " (*People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159.)  For purposes of section 289, subdivision (a)(1) and section 269, subdivision (a)(5), the term "force" means "the defendant accomplished an act of sexual penetration by the use of force sufficient to overcome the victim's will." (*In re Asencio* (2008) 166 Cal.App.4th 1195, 1205.)  As used in section 261, subdivision (a)(2), the term " 'force' " means " 'physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' " (*People v. Griffin*  (2004) 33 Cal.4th 1015, 1024 (*Griffin*).)  In other words, force for purposes of section 261, subdivision (a)(2) means "force sufficient to overcome the victim's will." (*Id.* at p. 1027.)

In the instant case, there was no evidence that counts 2, 3, and 27 were committed by means of force.  The evidence established that defendant placed his finger in nine-year-old Doe's vagina, and Doe "jumped up because it hurt."  Although Doe experienced pain during the penetration, the People failed to present evidence establishing that the pain was caused by anything other than the act of penetration itself.  There was no evidence that defendant grabbed, held, or restrained Doe in conjunction with the penetration.  (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 ["acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" constitute sufficient force.].)  There was no evidence that defendant pulled off Doe's clothes, and there was no evidence that defendant lay on top of Doe during the penetration.  (See *In re Asencio, supra,* 166 Cal.App.4th at p.1206 [the defendant's "act of pulling down [the child's] underwear and rolling his adult body on top of this six-year-old child" was sufficient force for the crime of forcible sexual penetration].)  Rather, the evidence established only that defendant placed his finger in Doe's vagina.  Thus, the evidence failed to establish force substantially different from or substantially in excess of

10

that required for the penetration, and the evidence failed to establish penetration accomplished by the use of force sufficient to overcome Doe's will. We accordingly conclude that there was insufficient evidence of force to support counts 2, 3, and 27.

Likewise, there was no evidence that count 4 was accomplished by means of force. The evidence established that defendant had sexual intercourse with 12-year-old Doe, defendant commented that "it was too tight," and Doe experienced some pain during the intercourse. Although Doe experienced pain, there was no evidence that the pain was caused by physical force sufficient to overcome Doe's will. Instead, the evidence strongly suggested that Doe's pain was caused by the penetration inherent in the sex act itself. As a general matter, "the force inherent in the act of penetration" is insufficient to establish the requisite force for forcible rape. (*In re Jose P.* (2005) 131 Cal.App.4th 110, 117.) Moreover, there was no other evidence that suggested that defendant exerted physical force upon Doe in order to overcome her will. There was no evidence that defendant pinned Doe down during the intercourse. (*Griffin, supra,* 33 Cal.4th at p. 1029 [finding sufficient evidence of force where the defendant "pinned [the victim's] arms to the floor as he penetrated her vagina with his penis"].) There was no evidence that defendant was on top of Doe during the intercourse. There was no evidence that defendant positioned Doe's body before or during the intercourse. (*People v. Young* (1987) 190 Cal.App.3d 248, 258 [finding sufficient evidence of force for forcible rape based, in part, on the defendant's "positioning of [the victim's] body in accomplishing the act"].) There was no evidence that defendant physically prevented Doe from terminating the intercourse. Thus, because the evidence failed to establish physical force sufficient to overcome Doe's will, we conclude that there was insufficient evidence of force to support count 4.

The People argue that *In re Jose P., supra,* 131 Cal.App.4th 110 requires us to find sufficient evidence of force to support counts 2, 3, 4, and 27. In *In re Jose P.*, the victim

11

"made it clear to appellant, repeatedly and prior to penetration, both that she did not want to be penetrated and that appellant's efforts were both against her will and physically painful to her. Appellant, nonetheless, forced his penis into her vagina. [The victim] was left with pain in her vagina and stomach, and with difficulty walking." (*Id.* at p. 117.) *In re Jose P.* held that this evidence was sufficient to establish the force required for forcible rape: "What we do hold is that there is substantial evidence in this case to show that, against the victim's will, appellant forced his penis inside her vagina and thus committed a violation of section 261, subdivision (a)(2)." (*Id.* at p. 118, fn. omitted.)

Defendant's case is distinguishable from *In re Jose P.* In finding sufficient evidence of force, *In re Jose P.* emphasized the fact that the victim repeatedly told the appellant she did not want to be penetrated and the fact that the victim experienced substantial pain after the rape. In defendant's case, there was no such evidence. There was no evidence that Doe told defendant she did not want to have sexual intercourse with him,[6] and there was no evidence that she told him she did not want to be digitally penetrated. Additionally, in defendant's case there was no evidence that Doe experienced pain of the same magnitude as that experienced by the victim in *In re Jose P.* Although Doe testified that the digital penetration "hurt" and that she experienced some pain during the intercourse, there was no evidence that Doe experienced significant, persisting pain like the victim in *In re Jose P.* Therefore, contrary to the People's assertion, *In re Jose P.* does not compel us to find sufficient evidence of force in defendant's case.

The People also argue that *Griffin, supra* 33 Cal.4th 1015 requires us to find sufficient evidence of force to support counts 2, 3, 4, and 27. In *Griffin*, the defendant

---

[6] In regard to count 4, the People contend that Doe told defendant she did not want to have sexual intercourse with him. The People mischaracterize the evidence. Doe testified that, on the instances when she told defendant she did not want to have sexual intercourse with him, defendant would not talk to her. Doe did not testify that she told defendant no before or during the sexual intercourse charged in count 4.

12

"pinned [the victim's] arms to the floor as he penetrated her vagina with his penis. The victim unequivocally testified she did not consent to the act of intercourse and that it was accomplished against her will." (*Id.* at p. 1029.) *Griffin* held that there was sufficient evidence of force to support the defendant's forcible rape conviction: "The jury could reasonably infer that by pinning her arms to the floor, defendant was able to achieve penetration on the occasion in question without [the victim's] consent before she was able to register her objection. The circumstance that defendant did not apply additional force to continue the intercourse after [the victim] objected does not eliminate his culpability for his initial penetration of [the victim] against her will by use of force." (*Ibid.*)

Defendant's case is distinguishable from *Griffin*. *Griffin* found sufficient evidence of force in the defendant's act of pinning the victim's arms to the floor. In defendant's case, there was no such use of force. There was no evidence that defendant physically restrained Doe in any way during the digital penetration or during the sexual intercourse. Accordingly, the People's reliance on *Griffin* is unavailing.

For the foregoing reasons, we conclude that the evidence failed to show force. We therefore hold that there was insufficient evidence to support counts 2, 3, 4, and 27.

## C. *There was Insufficient Evidence of Duress to Support the Remaining Counts*

In counts 5, 7, 9 and 11 defendant was convicted of forcible lewd conduct on a child in violation of section 288, subdivision (b)(1). In counts 6, 8, 10, 13, 14, 16, 17, 19, 21, 24, and 26 he was convicted of forcible rape in violation of section 261, subdivision (a)(2). In counts 12, 15, and 23 he was convicted of forcible oral copulation in violation of section 288a, subdivision (c)(2). In count 28 he was convicted of aggravated sexual assault on a child in violation of section 269, subdivision (a)(1). These

13

counts were based on the various sex acts that occurred at the Howard Court home, the Pinot Noir Court home, and the East First Street home.

The People argue the requisite duress for these offenses was established by Doe's testimony that defendant would not talk to her for a few days whenever she refused to have sexual intercourse with him. The People explain: "Doe . . . testified that she did not like it when [defendant] would not talk to her, because she still cared for him." As we will explain, the People's argument is unpersuasive.

As noted above, section 288, subdivision (b)(1) prohibits lewd conduct on a child committed by means of duress, and section 261, subdivision (a)(2) prohibits sexual intercourse against a victim's will by means of duress. Section 288a, subdivision (c)(2) criminalizes oral copulation "accomplished against the victim's will by means of . . . duress." (§ 288a, subd. (c)(2)(A).) Section 269, subdivision (a)(1) prohibits sexual intercourse "against a person's will by means of . . . duress." (See § 269, subd. (a)(1) [prohibiting rape "in violation of paragraph (2) . . . of subdivision (a) of Section 261" upon a child under 14 years old by a person seven or more years older than the child].)

As used in section 288, subdivision (b)(1) and section 288a, subdivision (c)(2), the term "duress" means " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [Citation.]" (*People v. Leal* (2004) 33 Cal.4th 999, 1004-1005, italics omitted.) For section 261, subdivision (a)(2) and section 269 subdivision (a)(1), the same definition of "duress" is employed, with the exception that a threat of hardship will not suffice. Thus, for purposes of section 261, subdivision (a)(2) and section 269 subdivision (a)(1), the term "duress" means "a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would

14

not have been performed, or acquiesce in an act to which one otherwise would not have submitted."  (§ 261, subd. (b); see § 269, subd. (a)(1) [prohibiting rape "in violation of . . . Section 261"].)

"The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress."  (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 51.)  "Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family."  (*People v. Cochran* (2002) 103 Cal.App.4th 8, 14 (*Cochran*).) " ' "Psychological coercion" without more does not establish duress.' "  (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1321 (*Espinoza*).)

In the instant case, there was insufficient evidence of duress.  Although Doe testified that she did not like it when defendant did not talk to her, defendant's act of not talking to Doe did not rise to the level of duress contemplated by the forcible sexual assault statutes.  Doe was between the ages of 13 and 16 at the time of the alleged offenses, and defendant was the "off and on" boyfriend of Doe's mother.  Defendant's act of not speaking to Doe for a few days was not the sort of conduct that would coerce a reasonable adolescent in Doe's position to have non-consensual sexual relations with defendant.  (See *People v. Veale* (2008) 160 Cal.App.4th 40, 47 [duress present where the victim "feared defendant and feared that if she told anyone defendant was molesting her, defendant would kill her or mother"]; *People v. Senior* (1992) 3 Cal.App.4th 765, 776 [duress present where the defendant threatened to hurt the victim and the defendant warned the victim she would "break up the family unit if she told"].)  Defendant's silence was mere psychological coercion, not duress that would compel a reasonable adolescent to submit to unwanted sexual advances.  (See *Espinoza, supra,* 95 Cal.App.4th at p. 1321.)  Moreover, Doe's testimony did not establish that she actually submitted to

defendant's sexual advances simply because she feared he would not speak to her. Rather, despite the fact that she knew defendant would not talk to her, on some occasions Doe refused to have sexual intercourse with defendant. Indeed, when asked if she was "willing to do anything" to get defendant to talk to her, Doe responded that she was not willing to do anything to get defendant to talk to her. Thus, defendant's act of not talking to Doe did not constitute sufficient evidence of duress.

*Espinoza, supra,* 95 Cal.App.4th 1287 is instructive. In *Espinoza*, the victim was 12 years old, she was "in special education classes at school," and the defendant was her father. (*Id.* at p. 1292.) The defendant molested the victim on five occasions. (*Id.* at p. 1293.) On the first four occasions, the defendant rubbed her breasts and vagina underneath her clothes. (*Ibid.*) The victim was " 'too scared to do anything' " when the defendant was molesting her. (*Ibid.*) On the fifth and final occasion, the defendant rubbed the victim's body, put his tongue in her mouth, licked her vagina, and tried to put his penis in her vagina. (*Ibid.*) During one of the molestations, the defendant asked, " 'Do you still love me?' " (*Id.* at p. 1295.) He then repeatedly said, " 'Please love me.' " (*Ibid.*) He possibly cried while asking the victim to love him. (*Ibid.*) We held that this evidence did not establish the requisite duress for forcible attempted rape and forcible lewd conduct on a child. (*Id.* at pp. 1320-1321.) We reasoned: "The only way that we could say that defendant's lewd act on [the victim] and attempt at intercourse with [the victim] were accomplished by duress is if the mere fact that he was [the victim's] father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress. What is missing here is the ' "direct or implied threat of force, violence, danger, hardship or retribution . . . ." ' [Citation.]" (*Id.* at pp. 1321.)

If the conduct in *Espinoza, supra*, 95 Cal.App.4th 1287, did not rise to the level of duress, we cannot conclude that the conduct in the instant case constituted duress. The

16

*Espinoza* defendant's emotional plea for the victim to love him seems more coercive than defendant's act of not talking to Doe. The *Espinoza* victim had limited mental capabilities and was afraid of the defendant. In contrast, Doe was not mentally disabled, and she specifically testified that she was not afraid of defendant. Doe was thus less susceptible to emotional coercion than the *Espinoza* victim. Moreover, duress is readily established when the defendant is the victim's father. (See *Cochran, supra,* 103 Cal.App.4th at p. 16, fn. 6 ["when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present"].) If the actions of the *Espinoza* defendant—the victim's father—did not constitute duress, it would be difficult for us to conclude that the actions of defendant—who was merely the "off and on" boyfriend of Doe's mother—constituted duress. We must therefore conclude that the evidence in defendant's case failed to establish duress.

The People argue that *Cochran, supra,* 103 Cal.App.4th 8 requires us to find sufficient evidence of duress. In *Cochran*, the defendant molested his nine-year-old daughter. (*Id.* at p. 15.) He directed the victim to digitally penetrate herself and to penetrate herself with a dildo and a vibrator. (*Id.* at p. 12.) He sodomized the victim, and he penetrated her vagina with his penis, his finger, a dildo and a vibrator. (*Id.* at p. 12.) The defendant weighed 100 pounds more than the victim, and the victim told the defendant that the sex acts hurt. (*Id.* at p. 15.) The defendant told the victim not to tell anyone about the molestation "because he would get in trouble and could go to jail." (*Ibid*.) *Cochran* held that there was sufficient evidence of duress to support the defendant's convictions for aggravated sexual assault on a child and forcible lewd acts on a child. (*Id.* at p. 16.) *Cochran* reasoned: "This record paints a picture of a small, vulnerable and isolated child who engaged in sex acts only in response to her father's parental and physical authority. Her compliance was derived from intimidation and the psychological control he exercised over her and was not the result of freely given

17

consent.  Under these circumstances, given the age and size of the victim, her relationship to the defendant, and the implicit threat that she would break up the family if she did not comply, the evidence amply supports a finding of duress." (*Id.* at pp. 15-16, fn. omitted.)

Defendant's case is distinguishable from *Cochran.*  Defendant was not Doe's father, and Doe—who was between the ages of 13 and 16 at the time of the alleged offenses—was much older than the *Cochran* victim.  Doe therefore cannot be considered as vulnerable as the *Cochran* victim.  Additionally, unlike *Cochran*, defendant never made an implied threat to break up Doe's family.  The People's reliance on *Cochran* therefore is unavailing.

The People also contend that *People v. Bergschneider* (1989) 211 Cal.App.3d 144 (overruled on another point in *Griffin, supra,* 33 Cal.4th at p. 1028) requires us to find sufficient evidence of duress.  In *Bergschneider,* the 14-year-old victim was "slightly mentally retarded," and the defendant was her stepfather. (*Bergschneider, supra,* 211 Cal.App.3d at p. 150.)  On a "regular basis," the defendant would have sexual intercourse with the victim and orally copulate her. (*Ibid.*)  Sometimes the victim would push the defendant's head away when he attempted to orally copulate her, and sometimes she would place her hands in front of her vagina in order to resist intercourse with the defendant. (*Ibid.*)  Before the first act of sexual intercourse, the defendant warned the victim she would be placed on restriction, which meant she could not "go anywhere or spend the night with anyone," if she refused to have sexual contact with him. (*Ibid*, fn. 3.)  *Bergschneider* held that there was sufficient evidence of duress to support the defendant's conviction for forcible oral copulation:  "Here, we conclude the threats of restriction are sufficient to allow the jury to conclude that [the defendant] accomplished the charged act of oral copulation with [the victim]—a 14-year-old of limited mental capability—by means of duress." (*Id.* at p. 154.)

18

The People's reliance on *Bergshneider* is misplaced. Unlike the victim in *Bergshneider*, Doe was not mentally retarded. The victim's limited mental capability was central to *Bergshneider's* determination that the oral copulation was accomplished by means of duress. (*Bergschneider, supra,* 211 Cal.App.3d at p. 154.) We therefore must conclude that defendant's case is distinguishable from *Bergschneider*.

For the foregoing reasons, we conclude that the evidence failed to show duress. We therefore hold that there was insufficient evidence to support counts 5-17, 19, 21, 23, 24, 26, and 28.

**D. *We Reverse Counts 27 and 28 and Reduce the Remaining Counts to Non-Forcible Offenses***

Defendant argues that "this court may find it appropriate to reduce [his] current convictions of forcible sex offenses to the appropriate non-forcible sex offenses." Specifically, defendant contends that his convictions should be reduced to the following "lesser-included non-forcible sex offenses: non-forcible lewd acts with a child (§ 288, subd. (a)), unlawful sexual intercourse with a minor (§ 261.5, subd. (a)), non-forcible penetration with foreign object (§ 289, subd. (j)), and non-forcible oral copulation with a minor (§ 288a, subds. (b)(2), (c)(1))." The People agree that any count that is not supported by sufficient evidence "should be reduced to an applicable lesser-included offense."

This court has the power to reduce convictions that are not supported by sufficient evidence: "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be

19

appealed." (§ 1181, subd. (6).)  We will accordingly reduce the convictions as requested by defendant.

The forcible lewd conduct convictions in counts 3, 5, 7, 9, and 11 are reduced to non-forcible lewd conduct in violation of section 288, subdivision (a).  The forcible rape convictions in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24 are reduced to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (d).[7]  The forcible rape conviction in count 26 is reduced to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (c).[8]  The conviction for forcible sexual penetration by a foreign object in count 2 is reduced to non-forcible sexual penetration by a foreign object in violation of section 289, subdivision (j).  The forcible oral copulation convictions in counts 12, 15, and 23 are reduced to non-forcible oral copulation in

---

[7] The charging allegations in the information established that Doe was under 16 years old and defendant was over 21 years old at the time of the intercourse charged in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24.  The evidence at trial confirmed that Doe was under 16 years old and defendant was over 21 years old at the time of the intercourse charged in those counts.  Due to their ages, we reduce the forcible rape convictions in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24 to convictions for violation of section 261.5, subdivision (d), not section 261.5, subdivision (a).  (See § 261.5, subd. (d) [prohibiting sexual intercourse between a "person 21 years of age or older" and "a minor who is under 16 years of age"]; § 261.5, subd. (a) [prohibiting "sexual intercourse accomplished with a person who is . . . a minor"].)

[8] The charging allegations in the information established that Doe was 16 years old and defendant was more than three years older than Doe at the time of the intercourse charged in count 26.  The evidence at trial confirmed that Doe was 16 years old and defendant was more than three years older than Doe at the time of that intercourse.  Due to their ages at the time of the intercourse, we must reduce the forcible rape conviction in count 26 to a conviction for violation of section 261, subdivision (c).  (See § 261.5, subd. (c) [prohibiting "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator"].)

20

violation of section 288a, subdivision (b)(2).[9] We remand for resentencing on these reduced counts.

The aggravated sexual assault on a child charged in count 27 was based on defendant's commission of forcible sexual penetration by a foreign object. The aggravated sexual assault on child charged in count 28 was based on defendant's commission of forcible rape. Because we conclude the evidence failed to establish a forcible sexual penetration by a foreign object or a forcible rape, there are no predicate offenses upon which to base counts 27 and 28. (See § 269, subds. (a)(1) & (a)(5) [an aggravated sexual assault on a child requires a forcible rape in violation of section 261, subdivision (a) or a forcible sexual penetration in violation of section 289, subdivision (a)].) We therefore must reverse counts 27 and 28.

## II. *Admission of the Letter Written by Doe*

Defendant argues the entire judgment must be reversed because the trial court prejudicially erred in admitting Doe's letter to her mother. As explained below, we agree that the trial court erred in admitting the letter, but we conclude that the admission of the letter was harmless.

### A. *Background*

Before trial, the prosecutor moved to admit the letter in which Doe explained she "turned to girls" because defendant had molested her. The trial court ruled that the letter could not be admitted as part of the prosecution's case-in-chief.

---

[9] The acts of oral copulation alleged in counts 12, 15, and 23 occurred when Doe was 14 years old and 15 years old. Section 288a, subdivision (b)(2) prohibits oral copulation with a victim "who is under 16 years of age." (§ 288a, subd. (b)(2).) In contrast, section 288a, subdivision (c)(1) prohibits oral copulation with a victim "who is under 14 years of age." (§ 288a, subd. (c)(1).) Due to Doe's age at the time of the oral copulations, we must reduce the convictions in counts 12, 15, and 23 to convictions for violation of section 288a, subdivision (b)(2), not section 288a, subdivision (c)(1).

During the direct examination of Doe, the prosecutor showed Doe the letter and asked, "And in general, what is the nature of the letter?" Doe responded, "Telling [my mother] why I turned to girls and why I am the way I am." The prosecutor asked, "When you [say] 'why you are the way you are,' what do you mean by that?" Doe explained that she had always been "rude" and "mean" to her mother. After this testimony, the prosecutor moved to admit the letter itself into evidence, but the court refused to admit the letter.

On cross-examination, defense counsel asked Doe, "And when did it come to the attention of your mother and/or the police that you were having sex with [defendant]?" Doe responded, "After I wrote her the letter." Defense counsel asked a few questions regarding Doe's mother's negative attitude toward Doe's lesbian relationship, and defense counsel then inquired, "After [your mother] didn't talk to you for a few days, that's when you told her why you turned to girls?" Doe replied, "Yes. I wrote her the letter so she could understand why I turned to girls."

During the direct examination of Doe's mother, the prosecutor asked Doe's mother to explain the nature of the report she filed with the police. Doe's mother replied, "Because my daughter had wrote me a letter." The prosecutor then asked, "What—what type of letter?" Doe's mother responded, "A letter specifying that—that [defendant] had molested her." During the cross-examination of Doe's mother, defense counsel did not ask any questions regarding the letter, and Doe's mother never mentioned the letter.

Following the testimony of Doe's mother, the prosecutor again moved to admit Doe's letter into evidence. Defense counsel objected to the admission of the letter. The court responded to defense counsel's objection: "It would seem to me, Counsel, that its contents are now admissible based on the fact that in your cross-examination of both the victim and her mother, you asked some—some questions about it. It would seem to me that once some parts of the letter have been brought in, that opposing counsel can bring

22

the whole letter in to explain the otherwise maybe out-of-context reference to it." The court continued: "It think it's Evidence Code section 356 which says if a document's partially referred to, the whole document may be entered. And based on the questions that were asked of Jane Doe on cross-examination, I think the whole document is now relevant, and I am inclined to allow admission of it."

The court then permitted Doe to read the letter into evidence. The letter stated the following: Doe "turned to girls" because defendant had "molested" her; because Doe wanted to get married and have children, she did not intend to "be with a girl [her] entire life"; Doe was disrespectful toward her mother because her mother failed to stop the molestation; during the time period when the molestation occurred, Doe prayed for the molestation to stop; during the time period when the molestation occurred, Doe "hated coming home after school."

**B.** *Standard of Review*

"A trial court's determination of whether evidence is admissible under [Evidence Code] section 356 is reviewed for abuse of discretion." (*People v. Parrish* (2007) 152 Cal.App.4th 263, 274 (*Parrish*).)

The following principles must guide an appellate court's abuse of discretion analysis: " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420; see *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern

the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' (*City of Sacramento v. Drew* (1989) 207 Cal. App. 3d 1287, 1297-1298.) To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' (*People v. Carmony* [(2004)] 33 Cal.4th [367,] 377.)" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773).)

**C. *The Trial Court Erred in Admitting the Letter Pursuant to Evidence Code Section 356***

Evidence Code section 356 states: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence." (Evid. Code, § 356.) This section "is sometimes referred to as the statutory version of the common-law rule of completeness." (*Parrish, supra,* 152 Cal.App.4th at p. 269, fn. 3.)

"The purpose of [Evidence Code section 356] is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed." (*People v. Arias* (1996) 13 Cal.4th 92, 156.) The prosecution may introduce an entire writing under Evidence Code section 356 where the "the statements proffered by defendant, when viewed in isolation, presented a misleading picture of the entirety" of the writing. (*Parrish, supra,* 152 Cal.App.4th at p. 276.)

In the instant case, defense counsel never asked Doe to describe portions of the letter. Rather, in response to defense counsel's cross-examination questions regarding Doe's relationship with her mother and the investigation of the charged crimes, Doe

24

testified that the letter reported the molestation and explained why Doe had "turned to girls." Nothing in Doe's cross-examination testimony created a misleading impression regarding the substance of the entire letter. The letter specified that Doe "turned to girls" because defendant had molested her; Doe's cross-examination testimony simply summarized the content of the letter. Moreover, Doe's cross-examination testimony merely reiterated evidence that was introduced during the prosecution's direct examinations of Doe and her mother. On direct-examination, Doe testified that she wrote the letter to explain to her mother the reason she had "turned to girls." On direct examination, Doe's mother testified that Doe's letter stated that defendant had molested Doe. Because Doe's cross-examination testimony simply reiterated evidence that had already been introduced by the prosecution, we cannot conclude that misleading defense evidence authorized the prosecution's introduction of the entire letter. Accordingly, because defendant offered no evidence creating a misleading impression of the entire letter, the trial court abused its discretion in admitting the letter pursuant to Evidence Code section 356. (See *People v. Riccardi* (2012) 54 Cal.4th 758, 803 [the trial court erred in admitting an entire audio recording where the properly admitted portions of the recording did not create a "misleading impression requiring the playing of the entire recording to correct any such misimpression"].)

### D. *The Error was Harmless*

The erroneous admission of evidence pursuant to Evidence Code section 356 is reviewed under the prejudice standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Riccardi, supra,* 54 Cal.4th at pp. 803-804 [applying *Watson* standard to the erroneous admission of evidence under Evidence Code section 356].) *Watson* requires reversal only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836.)

25

It is not reasonably probable that exclusion of the letter would have led to a result more favorable to defendant. The bulk of the letter simply reiterated facts that had already been established by properly admitted evidence. Doe repeatedly testified that she was involved in a lesbian relationship. During the pretext call, Doe stated that she became a lesbian because defendant had molested her. Doe also testified that she did not like being alone with defendant when she returned home after school, and that the molestation caused her to be rude and mean to her mother. Thus, the erroneous admission of the letter appears harmless because the letter " 'was merely cumulative of the properly admitted evidence.' " (*People v. Williams* (1997) 16 Cal.4th 635, 673.) Although Doe never testified that she prayed for the molestation to stop, the portion of the letter containing this information was very brief and not so prejudicial as to bias the jury against defendant. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 671 [admission of "brief" testimony was harmless].) Indeed, the letter as a whole was less inflammatory than Doe's testimony at trial. In the letter, Doe briefly stated that defendant had "molested" her, and that she had "turned to girls" because of the molestation. In contrast, Doe's lengthy trial testimony included specific details regarding the many sex acts that defendant initiated, her homosexuality, and her mother's negative attitude toward her homosexuality. (See *People v. Davis* (2005) 36 Cal.4th 510, 538 [admission of statements was harmless "because they were inconsequential in light of the vast quantity of admissible, highly damaging evidence"].) Accordingly, for the foregoing reasons, we conclude that exclusion of the letter would not have led to a more favorable result for defendant. The erroneous admission of the letter must therefore be deemed harmless.

**III.** *Motion to Discharge Retained Counsel*

Defendant argues the case must be remanded for resentencing on all counts because the trial court applied the wrong standard when ruling on his motion to discharge retained counsel. For the reasons set forth below, we agree with defendant's contention.

## A. *Background*

On the scheduled sentencing date, March 25, 2011, the trial court received a letter in which defendant requested permission to discharge his retained attorney and hire a new attorney. Defendant had sent the letter "a few weeks" earlier, but for unknown reasons the trial court had not received it. The court asked defendant if he still wished to hire a new attorney. Defendant responded that he would like to hire a new attorney, and that he would need "a couple months" to do so. The court replied, "No, I don't think that's a reasonable amount of time." The court agreed, however, to grant a two-week continuance so that defendant could secure a new attorney.

On April 22, 2011, defendant informed the court that he could not afford to hire a new attorney. The court responded: "And on the March 25th letter . . . you indicated that you felt you were wrongfully defended, and I think that's probably enough of a *Marsden*[10] motion . . . that I need to conduct a hearing on that." The court then closed the courtroom to the public and held a hearing.

At the beginning of the hearing, the court said to defendant: "I would invite you to expand, if you will, on your request for wishing to have your attorney relieved and the appointment of another attorney." Defendant explained that he disagreed with many of the tactics defense counsel employed throughout the proceedings. The trial court then asked defense counsel to describe the work he had done on defendant's case. Defense counsel explained the strategy he had employed in defending defendant.

At the end of the hearing, the court stated: "And . . . the evidence having been concluded, I would make my findings, and, one, there does not appear to be a breakdown between the attorney-client relationship. I do not see any conflicts between the attorney and [defendant] before, during, and even after trial. [¶] At this hearing, the burden is on

---

[10] The court appears to have been referring to *People v. Marsden* (1970) 2 Cal.3d 118.

the defendant to show his inadequate representation, and this evidence, using even the light standard of proof, does not establish that in any manner whatsoever. And having sat on the trial, during the trial I felt the attorney's conduct was thorough and very competent, and my opinion still remains . . . that a very competent representation of the defendant occurred in this case, and the arguments that were made, I thought, were just outstanding and memorable in my experience of listening to arguments. [¶] So your request to relieve this attorney is denied. [¶] And that would conclude the *Marsden* hearing."

**B.** *Reversal and Remand for Resentencing are Required*

"When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden, supra,* 2 Cal.3d 118, 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. The defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citations.]" (*People v. Taylor* (2010) 48 Cal.4th 574, 599.)

In contrast, when a defendant seeks to discharge retained counsel, the defendant "need not demonstrate his attorney is providing inadequate representation, or he and his attorney are embroiled in irreconcilable conflict." (*People v. Munoz* (2006) 138 Cal.App.4th 860, 866 (*Munoz*).) "[T]he defendant has the right to discharge retained counsel with or without cause. [Citation.] '[A]bsent prejudice to [the defendant] or unreasonable delay in the processes of justice,' a motion to relieve retained counsel must be granted . . . ." (*Id.* at p. 869.)

When a trial court erroneously denies a defendant's request to discharge retained counsel, reversal of the judgment is automatic. (*Munoz, supra,* 138 Cal.App.4th at pp. 870-871.) On remand, "the case shall proceed anew from the point defendant

28

originally sought to discharge his attorney." (*Id.* at p. 871.)

  *People v. Hernandez* (2006) 139 Cal.App.4th 101 (*Hernandez*) is instructive. In *Hernandez*, the defendant requested to discharge his retained attorney and have a public defender appointed. (*Id.* at p. 105.) The trial court "held what was in essence a *Marsden* hearing, requiring [the defendant] to demonstrate his counsel was providing inadequate representation or that he and his attorney were embroiled in an irreconcilable conflict." (*Id.* at p. 108.) The trial court denied the defendant's request, finding the defendant's disagreement with counsel's trial tactics was not a sufficient reason to discharge counsel. (*Ibid.*) *Hernandez* held that the trial court erroneously denied the defendant's request to discharge retained counsel, reasoning that "this *Marsden* hearing was 'the inappropriate vehicle in which to consider [the defendant's] complaints against his retained counsel.' [Citation.]" (*Ibid.*) *Hernandez* further held that reversal of the judgment was automatic: "Because the trial court utilized the wrong standard, it did not adequately address the issue of delay. Reversal is automatic where, as here, a defendant has been deprived of his right to defend with counsel of his choice." (*Id.* at p. 109.) In reaching its holding, *Hernandez* noted that it was of no consequence that the record suggested a valid reason for denying the defendant's request to discharge retained counsel. (*Ibid.*) *Hernandez* reasoned: "In this case, there appears to have been an adequate basis to deny [the request]. As we have seen, the request was made almost immediately before jury selection was to begin in a two-defendant case . . . , a circumstance that may have justified denial of the request. But . . . the trial court made no inquiry on the point and did not refer to it in its decision to deny [the defendant's] request. Instead, its decision appears to have been based entirely on application of a *Marsden* analysis. As we also have discussed, that does not suffice in a case such as this, when the defendant is represented by retained counsel . . . ." (*Ibid.*)

Defendant's case is analogous to *Hernandez*. Like *Hernandez*, the trial court applied the *Marsden* standard in ruling on defendant's motion to discharge retained counsel. Also like *Hernandez*, the trial court failed to consider prejudice to defendant and unreasonable delay—the only factors that were relevant to defendant's motion to discharge retained counsel. (See *Munoz, supra,* 138 Cal.App.4th at p. 869.) Accordingly, because the trial court applied the wrong standard in ruling on defendant's motion to discharge retained counsel, the ruling on the motion cannot stand. (*Hernandez, supra,* 139 Cal.App.4th at p. 109.) We therefore reverse the judgment and remand for resentencing on all counts with defendant afforded the opportunity to be represented by a new attorney. (See *Munoz, supra,* 138 Cal.App.4th at p. 871 [on remand "the case shall proceed anew from the point defendant originally sought to discharge his attorney"].)

## DISPOSITION

The judgment is reversed. We remand to the trial court with the following directions: (1) strike the aggravated sexual assault on a child convictions in counts 27 and 28; (2) reduce the forcible lewd conduct convictions in counts 3, 5, 7, 9 and 11 to non-forcible lewd conduct in violation of section 288, subdivision (a); (3) reduce the forcible rape convictions in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24 to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (d); (4) reduce the forcible rape conviction in count 26 to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (c); (5) reduce the forcible sexual penetration by a foreign object conviction in count 2 to non-forcible sexual penetration by a foreign object in violation of section 289, subdivision (j); (6) reduce the forcible oral copulation convictions in counts 12, 15, and 23 to non-forcible oral copulation in violation of section 288a, subdivision (b)(2); (7) conduct a new sentencing hearing for all counts with defendant afforded the opportunity to be represented by a new attorney.

30

_____
RUSHING, P.J.

WE CONCUR:


_____
PREMO, J.


_____
ELIA, J.