Filed 5/6/16  P. v. Rainey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D069431 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF10002642) |
| TYRELL JAMES RAINEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Affirmed as modified.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Guitierrez, and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Tyrell James Rainey of attempted premeditated murder (count 1, Pen. Code,[1] §§ 664 & 187, subd. (a)) and assault with a firearm (count 3, § 245, subd. (a)). The jury also returned true findings on enhancement allegations under sections 12022.53, subdivision (c) and 1192.7, subdivision (c)(8) accompanying each charge. The jury could not reach a verdict on a second allegation of attempted murder (count 2, §§ 664 & 187, subd. (a)) and the court later dismissed the charge on the prosecution's motion. With respect to count 1, the court sentenced Rainey to life with a minimum parole eligibility of seven years and a consecutive term of 20 years under section 12022.53, subdivision (c) for the personal discharge of a firearm. The court stayed punishment on count 3 under section 654 and ordered the sentence in this case served consecutively to the indeterminate sentence previously imposed on a prior conviction for attempted murder.

On appeal, Rainey contends his right to retain counsel of his choice under the Sixth Amendment to the United States Constitution was violated by the trial court's denial of his request to discharge his attorney on the eve of trial. He asserts the trial court also erred by permitting evidence of the prior attempted murder conviction. We reject both contentions. Rainey also asserts, and the People properly concede, the abstract of judgment should be amended to accurately reflect the sentence imposed on count 1 and to otherwise conform to the court's pronouncement of judgment. We modify the judgment accordingly.

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

2

FACTUAL AND PROCEDURAL BACKGROUND

A.   *The People's Case*

On the evening of January 22, 2010, Thayde Valdovinos and four friends waited in Valdovinos's car outside the house of one of the friend's girlfriend in Riverside, California. The group was heading to a party. While they were waiting, Valdovinos received a call from his girlfriend and got out of the car to take the call. As Valdovinos was talking, a blue two-door car driven by Rainey approached him, pulled over and stopped. A white, blond woman sat in the passenger seat of the car.

Rainey asked Valdovinos if he was looking for something, which Valdovinos first took to mean that Rainey was trying to sell him drugs or property. Rainey then asked Valdovinos if he was lost, if he knew where he was and what neighborhood he was in. Valdovinos took the questions as a threat, turned away from the car and yelled for his friends. Valdovinos then saw the flash of gunfire, and dropped to the ground. Valdovinos testified that he saw two flashes, heard two gunshots, and saw that the gun was fired by Rainey, not the passenger in the car. As Rainey drove away, Valdovinos heard Rainey fire one more shot that hit the driver's side passenger window of Valdovinos's car.

After the shots were fired, a nearby resident called 911. Riverside Police Department Officer Nathan Ashbury responded to the scene and interviewed Valdovinos. Ashbury gave a description of the vehicle based on Valdovinos's statement to dispatch and collected an expended round on the ground nearby. The following month, another Riverside Police Department Officer, Jeffrey Adcox, was patrolling the area where the

3

shooting occurred. Adcox observed a light blue Chevy Monte Carlo parked in the middle of the street. Adcox approached the car and saw Rainey sitting in the driver's seat. Adcox searched the car and found a loaded .38-caliber revolver wrapped in a blue bandana in a backpack in the backseat of the car. The gun contained three unused and two spent rounds of ammunition. Adcox collected the weapon and booked it into evidence.

In March, a criminalist with the California Department of Justice in Riverside examined the revolver and the expended round of ammunition found at the scene of the shooting. She concluded that the bullet found by Ashbury at the scene of the crime was fired from the revolver that Adcox collected from Rainey's car the following month. The January shooting was assigned to Riverside Police Department Detective David Smith for follow-up investigation. After the gun was recovered from Rainey, and after Smith received the criminalist's report, Smith visited Valdovinos at his work and showed him a photo lineup that included Rainey. Valdovinos identified Rainey and another person as looking like the shooter. Smith also showed Valdovinos a picture of Rainey's car and Valdovinos told Smith he recognized the car as the one driven by the shooter.

At trial, Riverside Police Department Detective Troy Banks testified that he spoke with Rainey in June 2010 as part of his assignment with the police department's gang unit. At that time, the unit was investigating several incidents of racial violence that had occurred between African-American and Hispanic males in the area. Banks had also observed a YouTube video that showed Rainey and other African-American males throwing gang signs and rapping about the "Clark Street Crips." Rainey told Banks that

4

he was shot by a Mexican in 2008 and that another friend was shot at his house by a Mexican. Rainey did not see his friend get shot, but told Banks he assumed it was a Mexican because they "do shit like that" and he knows "how Mexicans are around here."

In 2011, Rainey was involved in another shooting in Colton, California. The incident was prosecuted in San Bernardino County and Rainey was convicted of premeditated attempted murder for his role. Prior to trial in this case, the court granted the prosecution's motion in limine to include evidence of Rainey's involvement in the Colton shooting as evidence of Rainey's motive and intent in the case.

At trial, several witnesses testified to the events in Colton, including the victim, Sean Ceballos, and Michelle Zamorano. According to Zamorano, she drove Rainey to a party at an apartment in Colton with Rainey's friend Eric Moss and her sister, Alyssa. At the party, Rainey spilled a drink and then got into a verbal altercation with the party's host, Mauricio.[2] Mauricio asked Rainey to leave and called Zamorano to come back for them. Rainey left the apartment, but the altercation with Mauricio continued into the parking lot. Zamorano arrived, broke up the fight, and Rainey and Moss left with her. Zamorano testified that once in her car, Rainey and Moss were angry and repeatedly complained they were disrespected and knew who to call to take care of the situation.

Rainey and Moss told Zamorano that Mauricio needed to apologize or they would take matters into their own hands. In order to calm Rainey and Moss down, Zamorano agreed to go back to Mauricio's house and ask him to apologize after she dropped off

---

[2]     The record does not contain Mauricio's last name.

Rainey and Moss. Shortly after she arrived, while she was in a room with Mauricio, she heard a loud bang, a gunshot and then people screaming. She ran downstairs and saw Ceballos lying face down.

Ceballos testified he also heard the loud bang, and in response had gone to the front door and walked outside. Ceballos was confronted by Rainey, Moss and a third man who was wearing a mask. The three men told Ceballos they needed to see the "guy with the tattoos." Ceballos responded that he did not know who they were talking about and it wasn't his place to intervene. One of the three men then punched Ceballos and a fight broke out between them. During the fight, Ceballos felt a gun pressed into his stomach. He immediately stopped fighting, put his hands up, and said that he did not know who they were looking for and "it wasn't my problem . . . my beef . . . ." Ceballos then turned to walk away and was shot in the chest by the masked man. As a result of the gun shot, Ceballos was paralyzed from the waist down. While hospitalized, Ceballos identified Rainey as one of the three men involved in the altercation. After a jury trial, Rainey was convicted of premeditated attempted murder for his role in the shooting.

B. *Defense Case*

The theory of Rainey's defense was that Valdovinos misidentified him. In support, Rainey's counsel sought to discredit Valdovinos and introduced a stipulated statement that Valdovinos "admitted to police that on April 29, 2014, he had smoked methamphetamine and marijuana the night before and drank a beer on the day before driving though a red light causing an accident, which resulted in a death."

DISCUSSION

I

Rainey first contends that the court violated his rights under the Sixth Amendment to the federal Constitution by denying his request to discharge his retained attorney on the day the case was set to begin trial.

A

On July 8, 2014, the parties appeared in court to discuss pretrial motions and begin jury voir dire. Rainey's retained counsel, Darryl Exum, advised the court the parties had attempted to reach a plea agreement, but were unable to resolve the case. Before rejecting the plea agreement, however, Rainey requested an opportunity to talk to his family, who were present in the courtroom. The court granted the request and, after a pause in the proceedings for Rainey to speak with his family members, Exum advised the court that Rainey still did not want to accept the plea agreement and that Rainey no longer wanted to be represented by him.

The court then explained the charges to Rainey and the potential sentence he faced. Rainey expressed frustration with Exum's advice to accept the plea agreement and stated he had met with Exum just once, the prior Sunday. The court asked Rainey if he wanted a new attorney, but noted that in order for Rainey to fire Exum the court would need to find that it would not cause delay or hardship for either side. The court then stated: "We've got 160 people ready to come in and try this case. In addition to that, we have witnesses that are lined up for the prosecution to come in and testify. So there is an incredible hardship that would be involved." The court asked Rainey if he had another

7

attorney "ready to come in and try the case today?"  Rainey responded that he did not, but that he did not want Exum to represent him because he did not think Exum was fighting for him.

The court explained that it was Exum's professional obligation to inform Rainey of the risk involved in trying the case, and that he had no doubt that if Rainey chose to face trial Exum would fight for him.  The court stated:  "I've seen Mr. Exum in trials before.  He's been in this courtroom many, many times.  He has an excellent reputation as a lawyer."  The court said it would grant Rainey's request to fire Exum only if Rainey could have another attorney ready to try the case the same week.  Rainey responded he could not have another attorney ready, and the court denied the request.

### B

"The right to retained counsel of choice is—subject to certain limitations—guaranteed under the Sixth Amendment to the federal Constitution.  [Citations.]  In California, this right 'reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain.'  [Citations.]  When a defendant makes a 'timely motion to discharge his retained attorney and obtain appointed counsel,' unlike when a defendant seeks to substitute one appointed counsel for another, he is not required to demonstrate 'inadequate representation by his retained attorney, or to identify an irreconcilable conflict between them.' "  (*People v. Maciel* (2013) 57 Cal.4th 482, 512 .)

"The right to discharge a retained attorney is, however, not absolute.  [Citation.]  The trial court has discretion to 'deny such a motion if discharge will result in "significant

8

prejudice" to the defendant [citation], or if it is not timely, i.e., if it will result in "disruption of the orderly processes of justice." ' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 311.) "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the [S]ixth [A]mendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time." ' " (*People v. Ortiz* (1990) 51 Cal.3d 975, 983-984 (*Ortiz*).) "[U]nder the applicable test for retained counsel, the court should 'balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution.' " (*People v. Keshishian* (2008) 162 Cal.App.4th 425, 429 (*Keshishian*).) The court "must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " (*Ortiz,* at p. 984.)

C

We conclude that the trial court acted within its discretion in denying Rainey's motion to discharge Exum. At the time the motion was made, Rainey's case had been pending for four years. Trial was originally scheduled for March 14, 2011. After several continuances, the parties stipulated to a new trial date of August 1, 2011. On that date the case was assigned to a calendar department and a jury trial was scheduled for September 26, 2011. However, because Rainey was in custody in connection with the shooting of Ceballos, he did not appear and a bench warrant was issued for his arrest.

The case remained dormant until May 17, 2013. On that date Rainey appeared in the case represented by Exum for the first time. The parties then stipulated to several continuances, agreeing to a trial date of March 10, 2014. Exum was granted two additional continuances. On July 7, the matter was sent to Department 44 for trial and the People filed an amended information. Rainey denied the allegations in the information and trial was set to begin the next day.

As the Attorney General points out, by the time Rainey sought leave of court to fire Exum, Exum had represented Rainey for 14 months. Rainey did not have a new attorney when he made the request. Granting Rainey's request, therefore, would have necessitated a continuance of indefinite length. In denying Rainey's request, the trial court balanced the competing interests of proceeding with the prosecution in a timely and expeditious manner, where witnesses and counsel stood ready to proceed, against Rainey's interest in new counsel. Relieving Exum in this circumstance would have resulted in the "unreasonable disruption of the orderly processes of justice." (*Ortiz, supra*, 51 Cal.3d at p. 979; see also *Keshishian, supra*, 162 Cal.App.4th at p. 429.)

Rainey contends the court failed to balance his interests because it did not have any evidence before it showing how long a continuance he would need if he were permitted to discharge Exum. Rainey cites *People v. Courts* (1985) 37 Cal.3d 784 (*Courts*) in which the California Supreme Court stated that a "continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.' " (*Id*. at pp. 790-791.) In *Courts* the defendant,

10

Philip Courts, was initially represented by a public defender that Courts did not believe was experienced enough to handle the murder charge he faced.

A month before trial, Courts selected a private attorney and undertook efforts to raise the retainer fee required to hire the new attorney. (*Courts, supra*, 37 Cal.3d at p. 787.) Courts eventually retained the new attorney and a week before the trial date, both the public defender and Courts's new attorney attempted to obtain a continuance so that the new attorney could be brought up to speed. (*Id*. at pp. 788-789.) The trial court denied Courts's request for substitution and the Court of Appeal reversed, finding the denial was an abuse of discretion where Courts had "engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date" and had already established an attorney-client relationship with the new attorney. (*Id*. at p. 791.)

In contrast, Rainey did not have a new attorney at the time he made his request and the request was made on the day trial was set to begin. The court was confident in Exum's ability to represent Rainey and, even though it was not possible to know the total extent of the disruption that would be caused if Rainey were permitted to fire Exum, that unknown supported the court's finding.[3] (See *Keshishian, supra*, 162 Cal.App.4th at p.

---

[3]    Rainey also relies on *People v. Munoz* (2006) 138 Cal.App.4th 860 (*Munoz*) and *People v. Hernandez* (2006) 139 Cal.App.4th 101 (*Hernandez*). *Munoz* addressed the trial court's denial of the defendant's request to discharge his retained counsel and be appointed a public defender. The Court of Appeal held that the trial court's denial of the request constituted an abuse of discretion because the court improperly used the standards set forth in *People v. Marsden* (1970) 2 Cal.3d 118, which applies when the court must determine whether to replace one appointed attorney with another and requires the defendant to show incompetent representation or an irreconcilable conflict with his attorney. (*Munoz, supra*, 138 Cal.App.4th at pp. 866-869.) Similarly, in *Hernandez*, the

11

429 ["[T]he court is within its discretion to deny a last-minute motion for continuance to secure new counsel."].)  In sum, we conclude the court properly balanced the inevitable delay and disruption that would be caused if it permitted Rainey to fire Exum, against Rainey's rights to counsel of his choosing.

## II

Rainey next contends the court prejudicially erred by allowing the People to introduce evidence of his involvement and conviction in the 2011 shooting of Ceballos. Specifically Rainey asserts the court failed to properly exercise its discretion in evaluating and weighing the evidence under Evidence Code section 352.

## A

Prior to trial, the district attorney filed a motion in limine to admit evidence of Rainey's involvement in the Ceballos shooting under Evidence Code section 1101, subdivision (b) in order to prove Rainey's motive and intent to murder Valdovinos.  The motion asserted that the prosecution needed to establish Rainey's motive and state of mind to convict him of premeditated attempted murder.  The prosecution argued both crimes were racially motivated, and that in both cases Rainey was driven by his hatred of Hispanics and feelings of disrespect.  In its motion, the prosecution explained that Rainey had been the victim of racially motivated violence just a few years before the crimes.

---

Court of Appeal held that the trial court had improperly applied the *Marsden* standard to the defendant's request to replace his public defender with private counsel.  (*Hernandez, supra*, 139 Cal.App.5th at p. 108.)  Rainey does not contend the trial court applied the incorrect standard, only that the court's finding of prejudice was error.  We agree with the Attorney General that *Munoz* and *Hernandez* do not support reversal here.

12

The prosecutor contended the Ceballos shooting evidence was particularly important and probative because Rainey and Valdovinos were strangers to each other.

The motion in limine also asserted the evidence was not properly excluded under Evidence Code section 352 because it would not consume much additional time. Further, any risk of prejudice was reduced because jurors would be told that Rainey was already convicted for the uncharged conduct and he was not the shooter in that case. The jurors, therefore, would not want to punish him a second time. The prosecution contended the probative nature of the evidence was not substantially outweighed by its prejudicial effect.

At the hearing on the motion in limine, the court indicated it had read the prosecution's brief and the cases cited therein and provided a thorough explanation of its analysis of the issue. The court agreed with the prosecution that the uncharged offense and the crime in the case at bench were similar in nature and that the uncharged offense was probative of the elements of motive and intent.[4] The court then ruled that the evidence was admissible under Evidence Code section 1101, subdivision (b) and not unduly prejudicial under Evidence Code section 352.

---

[4] Before ruling, the court asked Exum for comment and he submitted. In his opening brief, Rainey asserts that if this court concludes Exum did not object to prosecution's introduction of the evidence, he received ineffective assistance of counsel. The Attorney General does not argue the issue was waived by Exum and the record shows that Exum preserved Rainey's objection to the introduction of the evidence.

B

Evidence Code section 1101, subdivision (a) requires the exclusion of evidence of a "person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) . . . to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) Subdivision (b), however, permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . ) other than his or her disposition to commit such an act." (*Id.*, subd. (b).)

Evidence of an uncharged crime, therefore, is admissible as long as it is relevant to prove a fact such as motive, opportunity, intent, plan, or knowledge. (Evid. Code, § 1101, subd. (b); *People v. Davis* (2009) 46 Cal.4th 539, 602.) " 'The admissibility of other crimes evidence depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged crimes to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.' " (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.)

The California Supreme Court has "explained that 'there exists a continuum concerning the degree of similarity required for cross-admissibility, depending upon the purpose for which introduction of the evidence is sought: "The least degree of similarity . . . is required in order to prove intent. [Citation.] . . . In order to be admissible [for that purpose], the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each

14

instance.' " ' [Citation.] 'By contrast, a higher degree of similarity is required to prove common design or plan, and the highest degree of similarity is required to prove identity.' " (*People v. Lynch* (2010) 50 Cal.4th 693, 736.)

The admission of evidence about an uncharged crime " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " (*People v. Balcom* (1994) 7 Cal.4th 414, 426.) The court must examine whether the probative value of the prior bad act evidence is " 'substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)" (*Id.,* at p. 427.) On appeal, we review a trial court's decision to admit or exclude evidence under Evidence Code sections 1101, subdivision (b) and 352 for an abuse of discretion. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004-1005.)

C

Rainey does not argue the evidence was not properly admitted under Evidence Code section 1101, subdivision (b). Rather, he complains only that the evidence was so prejudicial that under Evidence Code section 352 it was an abuse of discretion for the trial court to admit it. We disagree. The trial court's admission of evidence of Rainey's involvement and conviction in the Ceballos shooting for the purposes of demonstrating Rainey's intent and motive in this case was not unduly prejudicial.

Contrary to Rainey's assertion, the trial court took care to conduct the weighing process mandated by Evidence Code section 352, balancing the probative value of the evidence of the prior shooting against its potential prejudice to Rainey. The two offenses

15

were similar—each involved Hispanic male victims and the evidence showed that Rainey perceived disrespect by each victim. Given the similarity of the offenses, the probative value of the evidence of Rainey's uncharged offense was great. (See *People v. Roldan* (2005) 35 Cal.4th 646, 706 [" ' "We have long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." ' "].) The evidence of the uncharged shooting supported the prosecution's theory of Rainey's motive and intent to kill Valdovinos.

Further, "[t]he prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging." ' " (*People v. Karis* (1988) 46 Cal.3d 612, 638.) " 'In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 286.)

16

As stated, the evidence of the uncharged shooting incident was probative of Rainey's guilt. To the extent the evidence could be viewed as inflammatory, it was tempered by the facts that Rainey was not the shooter and had already been convicted and sentenced for the uncharged crime. Further, the court specifically instructed the jurors that evidence of the shooting could be considered only in determining Rainey's intent and motive. The court's instruction specifically informed the jury that it could not conclude from this evidence that Rainey had a bad character or that he was predisposed to commit crimes, protecting against potential prejudice to Rainey based simply on emotional bias against him. We conclude that the trial court's determination that the probative value of the evidence of the Ceballos shooting was not "substantially" outweighed by the potential risk of prejudice to Rainey was not arbitrary, capricious or patently absurd.[5]

## III

Finally, Rainey asserts the abstract of judgment must be corrected to accurately reflect the sentence imposed by the trial court. Specifically, he contends (1) the sentence contained in the abstract of judgment on count 1, "7 years to life," should be modified to "life with the possibility of parole"; (2) the victim restitution contained in the judgment should be deleted; and (3) the term "1st" should be removed from the name of the offense on count 1.

---

[5]   To the extent Rainey claims the court's evidentiary ruling violated his due process and fair trial rights, we disagree. The evidence was properly admitted under Evidence Code section 1101, subdivision (b) and there is no basis for the contention that admission of the evidence violated Rainey's due process rights and rendered his trial fundamentally unfair. (*People v. Rogers* (2013) 57 Cal.4th 296, 331 [no due process violations when evidence was material, probative, and properly admitted].)

The Attorney General does not object to these corrections. She accurately notes the court did not impose victim restitution or reserve jurisdiction to do so, and that there is no such offense as "1st Attempted Murder." Accordingly, we direct the trial court to amend the judgment in these two respects. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) With respect to the sentence imposed on count 1, the Attorney General notes that the court's oral pronouncement of judgment indicated that the minimum parole eligibility period for the offense is seven years and requests that the abstract of judgment be amended to reflect this pronouncement.

We agree with the Attorney General that the court's oral pronouncement of the sentence properly stated the minimum term of confinement of seven years under the relevant Penal Code provisions. (See *People v. Jefferson* (1999) 21 Cal.4th 86, 93, 96 [the minimum period of parole eligibility for attempted premeditated murder is "found in section 3046, which provides in relevant part: 'No prisoner imprisoned under a life sentence may be paroled until he or she has served at least seven calendar years . . . .' "].) Rainey argues this minimum parole eligibility term should not be included in the abstract of judgment because the statutory provision establishing the minimum, section 3046, "is subject to Legislative amendment at any time" and if the statute is later amended to permit parole before seven years have passed "his sentence might be seen as requiring he serve seven years independent of section 3046."

We disagree. "By including the minimum term of imprisonment in its sentence, a trial court gives guidance to the Board of Prison Terms regarding the appropriate minimum term to apply, and it informs victims attending the sentencing hearing of the

18

minimum period the defendant will have to serve before becoming eligible for parole." (*People v. Jefferson, supra*, 21 Cal.4th at p. 101, fn. 3.) The court's oral pronouncement appropriately indicated the minimum period of incarceration on count 1 before eligibility for parole, and the abstract of judgment should correspond.

## DISPOSITION

The judgment is affirmed as modified. The trial court is directed to amend the abstract of judgment to conform to the judgment by: Removing "1st" from the name of the crime on count 1; removing victim restitution under section 1202.4, subdivision (f); and amending the sentence on count 1 to life with a minimum seven years incarceration before parole eligibility. The trial court is also directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


McCONNELL, P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.